John Burton, State Bar No. 86029
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 449-8300
Facsimile: (626) 449-8197

Attorneys for Plaintiff Tracy Alves, Individually and as Successor in Interest for Kevin R. Niedzialek, Deceased,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ALVES, Individually and as Successor in Interest for KEVIN R. NIEDZIALEK, deceased,<br><br>Plaintiff,<br><br>v.<br><br>RIVERSIDE COUNTY, RIVERSIDE SHERIFF'S DEPARTMENT, SHERIFF-CORONER CHAD BIANCO, DEPUTY SONIA GOMEZ, DEPUTY BRIAN KEENEY, and DOES 3-10,<br><br>Defendants. | Case No. 19-CV-02083-JGB (SHKx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br><br>**1.  42 U.S.C. § 1983**<br>**2.  Cal. Civ. Code § 52.1**<br>**3.  Assault and Battery**<br>**4.  Police Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION

1. Plaintiff Tracy Alves brings this action pursuant to 42 U.S.C. § 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution. Accordingly, jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Plaintiff alleges state-law theories of recovery that are so related to the federal claims as to form part of the same case and controversy, and therefore invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

## PARTIES

2. The Decedent is Kevin Robert Niedzialek, who died at age 34 without any living parent, spouse or issue. Plaintiff is Decedent's sole surviving sibling and therefore is his sole heir and has standing to assert the wrongful death claims alleged herein. She sues individually and as her brother's successor in interest. She filed the required Declaration pursuant to Cal. Civ. Code § 377.32 with the initial complaint.

3. Defendant County of Riverside is a government entity operating pursuant to the general laws of California. Defendant Riverside Sheriff's Department (RSD) is a public agency subject to suit.

4. Defendant Chad Bianco is the Sheriff-Coroner of Riverside County.

5. Defendants Sonia Gomez and Brian Keeney are RSD deputy sheriffs. They were sued in the Complaint as Does 1 and 2.

6. Does 3 to 10 are unnamed because their identities have yet to be ascertained.

7. Each Doe defendant acted under color of law and within the scope of his or her agency and employment for Defendants County and RSD, and in some manner contributed to the death of Decedent, or otherwise caused the deprivation of Decedent's rights and other harm as alleged below.

8. Plaintiff is informed and believes and thereon alleges that each Defendant was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the acts and omissions alleged, was acting within the course and scope of those relationships. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and authorized the acts or omissions of each Defendant as alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

9. Plaintiff bring these claims pursuant to Cal. Civil Proc. Code §§ 377.20 et seq. and §§ 377.60 et seq., which provide for survival and wrongful death actions and are incorporated into the § 1983 claims through 42 U.S.C. § 1988. Plaintiff also brings her claims individually and on behalf of Decedent on the basis of 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, Cal. Civ. Code § 52.1, and other provisions of federal and state civil-rights law. Plaintiff bring these claims as a Private Attorney General to vindicate not only her rights and those of Decedent, but others' civil rights of great importance.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Prior to retaining counsel, Plaintiff timely filed a governmental tort claim with the County pursuant to Cal. Gov't Code § 910. The claim was denied on August 23, 2019, and this action is timely filed within all applicable statutes of limitation. Plaintiff timely filed an amended claim through counsel that has been pending more than 45 days. Plaintiff fully exhausted her administrative remedies as to all state claims.

## FACTS

11. Plaintiff and Kevin are siblings. In part because both their parents and the third sibling passed away, they were extremely close. Plaintiff and her husband have a blended family of seven children. Kevin was very much a part of that nuclear family unit, and was highly involved with their children's lives. Plaintiff functioned somewhat as a parental figure for Kevin, and they loved each other immensely.

12. In the past Kevin struggled with substance abuse, on and off. For the last two years of his life he lived clean and sober. Plaintiff is informed and believes that Kevin relapsed a few days before his death by using methamphetamine. Plaintiff alleges that the relapse was not a proximate cause of his death, and would not have affected their relationship, as he had in the past demonstrated the ability to abstain.

13. When the relapse happened, Kevin was staying temporarily with a friend he knew from recovery meetings at Apartment 27A in a complex located at 42200 Moraga Road in Temecula, California. During the early afternoon of July 29, 2019,

1 Kevin sustained a large laceration on his head, apparently while inside the apartment.
2 The wound bled profusely. Plaintiff does not know the cause of this injury, but is
3 informed and believes that Kevin may have had an accident or been the victim of an
4 assault and battery. The impact may have caused a serious concussion that adversely
5 affected Kevin's cognition and behavior during his interaction with the deputies. The
6 wound, though bloody and severe enough to require immediate medical attention, was
7 not life threatening and did not cause this death.

8     14.    Starting shortly after 2:10 p.m., RSD dispatch received several 911 calls
9 from neighbors who reported noises, yelling and other actions by an unarmed man with
10 a bloody head wound. The dispatcher wrote on the dispatch log sent to the deputies'
11 car computer terminals that the person sounded incoherent and appeared
12 psychologically disturbed. According to the callers, the person started out in an
13 apartment but moved into the common area of the apartment complex. He was
14 reportedly wearing pajama pants with no shirt, and was bleeding from the head. From
15 the outset, this man, Kevin, presented a health issue. There was no crime reported.

16     15.    Shortly after 2:30 p.m., RSD deputies Keeney and Gomez arrived
17 separately at the apartment complex. They parked in different areas, and approached
18 the scene from different directions. Deputy Keeney was not wearing a camera, but
19 Deputy Gomez activated her body-worn camera, which captured video that provides a
20 record of events.

21     16.    Deputy Keeney found Kevin covered in blood from the head wounds,
22 sitting on concrete with his back against a wall in a common-area alcove. Kevin was not
23 wearing a shirt and was obviously not armed. Kevin was highly agitated and incoherent,
24 repeating "Here, here, here," "Please, please, please," and making other sounds. Both
25 deputies could see that Kevin was irrational and needed immediate medical attention.
26 There was no apparent crime, but Kevin needed to be medically evaluated and, perhaps,
27 involuntarily committed to an appropriate mental health facility pursuant to Cal. Welf.
28 & Inst. Code § 5150. Neither deputy called for medical or mental assistance, however.

17. Without warning, Kevin jumped to his feet and ran at Deputy Keeney, stopping abruptly with his hands at his side a few feet from the deputy. He yelled, "Wait, wait, wait," then advanced slowly. As Deputy Keeney backed up, Deputy Gomez fired her Taser Model X-2, both darts striking Kevin on his right side, making good contact. The Taser worked as intended. Kevin stiffened immediately and fell forward into a dirt planter area while screaming in pain.

18. After the audible five-second Taser cycle ended, Deputy Keeney moved in to handcuff Kevin, who was squirming in the dirt, yelling, "No, no, no," among other things. Deputy Keeney backed away. Kevin sat up and said, "Ok, I'm here." Deputy Keeney appropriately attempted to engage Kevin and de-escalate by saying, "Relax, buddy." Deputy Gomez, who should have just stayed quiet, however, began threatening to tase Kevin again, and yelled commands at him. She commanded Kevin to lie down, which he did, on his back, but when she commanded him to roll over onto his stomach, he jumped to his feet, facing Deputy Keeney.

19. Deputy Gomez activated the Taser a second time. (She did not need to fire darts again because the two darts from the first discharge were still embedded in Kevin's flesh.) Kevin again stiffened and fell forward, this time landing in a different dirt planter area. Deputy Keeney moved in and knelt on Kevin's left side while grabbing his left arm and bending it behind his back for cuffing. Deputy Gomez dropped or holstered the Taser and retrieved Kevin's right arm from underneath him with little difficulty, putting it behind his back. With Deputy Keeney's assistance, Deputy Gomez quickly handcuffed both wrists, securing Kevin so that he no longer posed a risk to the deputies, himself or anyone else. The deputies knew that Kevin was in a medical crisis. As soon as the handcuffs were closed, Deputy Gomez radioed for an ambulance. At that point the deputies were required to take their weight off Kevin's back and put him into a recovery position, either sitting up or on his side. Instead, they held Kevin down on his chest, asphyxiating him.

20. As the deputies chatted, they held Kevin down on his chest, his legs flailing with increasing weakness as he struggled to breathe and stay alive. At one point, Kevin tried to roll himself onto his left side, putting himself in a recovery position so that he could breathe and live, but Deputy Keeney rolled him back on his chest and held him down.

21. The deputies continued to chat as they asphyxiated Kevin. Two-and-a-half minutes after cuffing, well after Kevin stopped showing any sign of life. Deputy Keeney finally took his knee off Kevin's back. With both deputies still holding him down, Deputy Gomez made the first attempt to check Kevin's condition three minutes after cuffing, asking: "Hey buddy, can you tell us your name?" On the video, the deputies appear unconcerned that Kevin was unresponsive. The deputies continued to hold him down on his chest. After another one minute and 45 seconds the deputies rolled Kevin over. He was obviously in full cardiac and respiratory arrest. His eyes were open and his pupils fixed and dilated. He was not breathing. Kevin had been on his chest, held down, for almost five minutes after handcuffing.

22. The deputies did not initiate CPR. In fact, they did not even remove the handcuffs. Deputy Gomez thought she felt a pulse, but that was just her own pulse from pressing down on his neck.

23. AMR paramedics arrived about 2:45 p.m. They found Kevin handcuffed and in cardiac arrest, with no pulse or respiration. His skin was ashen and cool. The paramedics, later joined by firefighters, were able to resuscitate Kevin, but after too much cardiac downtime. Kevin sustained massive anoxic brain injury and was declared brain dead the next day. He was kept alive, however, so that his organs could be harvested and transplanted so that others might live.

**POLICY AND PRACTICE ALLEGATIONS**

24. Plaintiff is informed and believes, and on that basis alleges, that the County and RSD, and their decision makers, including but not limited to Sheriff Chad Bianco, with deliberate indifference, gross negligence, and reckless disregard to the

safety, security, and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, customs and usages of, among other things,

    (a)    Allowing employees to subject people to unreasonable uses of force against their persons when they are impaired and agitated, presenting with a health emergency rather than a law enforcement problem.

    (b)    Failing to adequately train, supervise and control employees in the proper tactics to safely contain and secure persons who are in an agitated, irrational or delusional state using de-escalation tactics, including having one deputy be responsible for calming the subject and all communication.

    (c)    Failing to provide mobile mental health teams, and to adequately train, supervise and control employees in the proper use of medical and mental health resources, as well as deputy backup, to assist with persons who are in an agitated, irrational or delusional state.

    (d)    Failing to adequately train, supervise and control employees in the use of taser shocks in combination with prone restraints, including but not limited to the risk of compression asphyxia from multiple taser shocks followed by prolonged prone restraints to take into custody persons such as Decedent, who are impaired and agitated, but not engaged in criminal activity, and who may have pre-existing medical and psychiatric conditions, or drug intoxication, which make such tactics particularly dangerous.

    (e)    Failing to adequately train, supervise and control employees that impaired or agitated persons may have difficulty with certain social interactions, including interactions with law enforcement officers, including but not limited to difficulty understanding and following commands and directions.

    (f)    Failing to adequately train, supervise and control employees that they should not take agitated or impaired persons into custody without taking into account and making proper accommodations for their current physical and

1     mental condition and the related behavioral problems.

2     (g)     Failing to adequately train, supervise and control employees that they
3     should not use tasers and other potentially lethal, or excruciatingly painful,
4     weapons to control agitated or impaired persons without regard for the health
5     consequences.

6     (h)     Failing to adequately train, supervise and control employees that chest
7     compressions and other aggressive prone restraints impair breathing and can
8     have catastrophic consequences, particularly when used on a person who is
9     impaired or agitated, or who has been subjected to Taser current.

10    (i)     Failing to adequately train, supervise and control employees to monitor
11    the respirations and pulse of agitated and impaired persons during an arrest, to
12    place them in a recognized recovery position at the earliest opportunity, and to
13    initiate CPR and other first aid as necessary.

14    (j)     Failing to compel employees to take their training into account, including
15    the principles outlined in subparagraphs (b) through (i), above, and to follow that
16    training when dealing with an impaired or agitated person.

17    (k)     Failing to adequately investigate and, when appropriate, discipline or
18    retrain deputies involved in misconduct.

19    (l)     Condoning and encouraging deputies in the belief that they can violate the
20    rights of persons such as Decedent with impunity, and that such conduct will not
21    adversely affect their opportunities for promotion and other employment
22    benefits.

23    (m)     Failing to analyze critical incidents such as this one and take appropriate
24    corrective action to prevent recurrences.

25   The foregoing list is illustrative and not exhaustive.

26           25.     Plaintiff is informed and believes, and thereon alleges, that the County and
27   RSD, and their respective decision makers, including but not limited to Sheriff-Coroner
28   Chad Bianco, ordered, authorized, acquiesced in, tolerated, permitted or maintained

- 8 -

1 custom and usages permitting the other defendants herein to engage in the unlawful
2 and unconstitutional actions, policies, practices, and customs or usages set forth in the
3 foregoing paragraph and its subparagraphs. Defendants' conduct as alleged herein
4 constitutes a pattern of constitutional violations based either on a deliberate plan by
5 defendants or on defendants' deliberate indifference, gross negligence, or reckless
6 disregard to the safety, security, and rights of Decedent.

**DAMAGES**

26. Plaintiff in her individual capacity as Decedent's sole heir sustained wrongful death damages in an amount in accordance with proof.

27. Plaintiff in her various capacities, has incurred medical, burial and other related expenses as a result of Decedent's hospitalization and death.

28. Decedent sustained general damages, including pre-death pain and suffering, and the loss of enjoyment of his life, in an amount in accordance with proof.

29. In doing the foregoing wrongful acts, the individual Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Decedent and Plaintiff. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant (but not the entity defendants, which are immune from such damages) in an amount adequate to punish the wrongdoers and deter future misconduct.

**FIRST CAUSE OF ACTION**

(42 U.S.C. § 1983)

30. Defendants Gomez and Keeney, and Does, acting under color of state law, in their individual capacities, deprived Decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth and Fourteenth Amendments to the Constitution, by, among other things, subjecting Decedent to excessive force, including but not limited to, unnecessarily holding him on his chest after handcuffing, preventing him from breathing, causing him to asphyxiate and die. Defendants Gomez and Keeney, and

Does, knew that Decedent's medical condition was serious but treatable, and they consciously disregarded his need for and access to medical care. They recklessly, with both objective and subjective deliberate indifference, disregarded Decedent's serious medical condition and needs, including failing to move him into a recovery position after handcuffing, and failing to timely remove his handcuffs and initiate CPR, proximately causing his severe anoxic brain injury and consequent death.

31. Defendants County, RSD and Bianco, acting in his individual capacity, promulgated, tolerated and applied, the policies, practices and usages alleged in paragraphs 24 and 25, which were a moving force that deprived Decedent of rights, privileges, and immunities secured by the Fourth Amendment to be free from unreasonable seizure and the Fourteenth-Amendment right to medical attention, as alleged in the preceding paragraph.

32. As a result of Defendants' excessive force and deliberate indifference for Decedent's need for medical care and treatment, as well as the policies, customs, practices and decisions alleged in paragraphs 24 and 25, Plaintiff and Decedent suffered damages as alleged above.

33. Defendants subjected the Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent would be violated by their acts and/or omissions.

34. The conduct of the individual Defendants sued in their personal capacities entitles Plaintiff in her individual and representative capacities to punitive damages and penalties allowable under 42 U.S.C. § 1983. Plaintiff does not seek punitive damages against Defendants County and RSD.

## SECOND CAUSE OF ACTION

(Cal. Civil Code § 52.1 - Bane Act)

35. Plaintiff brings this claim in her capacity as Decedent's personal representative, seeking all statutory, compensatory, special and punitive damages allowable under Cal. Civ. Code § 52.1 that survive Decedent's death.

36. By their acts, omissions, customs, and policies, Defendants Gomez and Keeney, acting in concert, as described above, by way of threat, intimidation, and coercion, and with the specific intent to deprive Decedent of his rights, and in reckless disregard for those rights, did deprive Decedent of rights protected under Cal. Civil Code § 52.1 and the following clearly established rights under the laws and constitutions of the United States and California:

(a) Decedent's right to be free from an unreasonable ongoing seizure and due process of law, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

(b) Decedent's right to be free from deliberate indifference to his serious medical needs while in custody, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

(c) The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and

(d) The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

37. Defendants County and RSD are vicariously liable for Bane Act violations committed by their employees pursuant to Cal. Gov't Code § 815.2.

38. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Decedent's rights under the United States and California Constitutions and law, Decedent sustained injuries and damages, and is entitled to relief

- 11 -

as set forth above, and punitive damages against Defendants Gomez and Keeney, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, statutory damages, and attorneys' fees.

### THIRD CAUSE OF ACTION
### (Assault and Battery)

39. Plaintiff brings this claim individually pursuant to the California wrongful death statute, and as the personal representative of Decedent for those damages that survive.

40. As alleged above, Defendants Gomez, Keeney and Does assaulted and battered Decedent, causing his death. As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff lost Decedent's love, society and companionship, and other wrongful death damages in an amount in accordance with proof. Defendants Gomez and Keeney acted with reckless disregard for Decedent's rights, and with malice and oppression such that punitive damages should be awarded to Plaintiff in her capacity as Decedent's personal representative. Plaintiff is not seeking punitive damages against the County or RSD.

41. Defendants County and RSD are vicariously liable for assault and battery committed by their employees pursuant to Cal. Gov't Code § 815.2.

### FOURTH CAUSE OF ACTION
### (Police Negligence)

42. Plaintiff brings this claim individually pursuant to the California wrongful death statute.

43. As alleged above, Defendants Gomez, Keeney and Does owed Decedent a duty of due care when restraining him. That duty was breached in that Defendants' failed to exercise due care in dealing with Decedent, as alleged above, and as a result asphyxiating him and thereby proximately causing his death. Plaintiff lost Decedent's love, society and companionship, and other wrongful death damages in an amount in accordance with proof.

44. Defendants County and RSD are vicariously liable for the negligence of their employees pursuant to Cal. Gov't Code § 815.2.

WHEREFORE, Plaintiff prays for judgment as follows:

**On All Causes of Action:**

a. Compensatory general and special damages in accordance with proof;

b. Costs of suit necessarily incurred herein; and

c. Such further relief as the Court deems just or proper.

**On the First and Second Causes of Action:**

d. Reasonable attorney's fees and expenses of litigation.

**On the First, Second and Third Causes of Action:**

e. Exemplary damages against the Defendants (except the County and RSD) in an amount sufficient to make an example of those defendants and to deter future misconduct.

**On the Second Cause of Action:**

f. Statutory damages against the Defendants (except the immune entity defendants, the County and RSD).

Dated: July 14, 2020                    THE LAW OFFICES OF JOHN BURTON

　　　　　　　　　　　　　　　　　　　　　　　／s／ John Burton
　　　　　　　　　　　　　　　　　　　　　　　John Burton
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated: July 14, 2020                    THE LAW OFFICES OF JOHN BURTON

　　　　　　　　　　　　　　　　　　　　　　　／s／ John Burton
　　　　　　　　　　　　　　　　　　　　　　　John Burton
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff