**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, State Bar No. 144074
dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

**THE LAW OFFICES OF JOHN BURTON**
John Burton, State Bar No. 86029
jb@johnburtonlaw.com
128 North Fair Oaks Avenue
Pasadena, California 91103
Tel: (626) 449-8300; Fax: (626) 449-8197

**HELM LAW OFFICE, PC**
T. Kennedy Helm, IV, State Bar No. 282319
kennedy@helmlawoffice.com
644 40th Street, Suite 305
Oakland, California 94609
Tel: (510) 350-7517; Fax: (510) 350-7359

Attorneys for Plaintiff Tracy Alves, Individually and as
Successor In Interest for Kevin R. Niedzialek, Deceased

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ALVES, Individually and as Successor in Interest for KEVIN R. NIEDZIALEK, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>RIVERSIDE COUNTY, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF-CORONER CHAD BIANCO, DEPUTY SONIA GOMEZ, DEPUTY BRIAN KEENEY, and DOES 3–10,<br><br>Defendants. | Case No. 5:19-cv-02083-JGB (SHKx)<br><br>*Honorable Jesus G. Bernal*<br>*Mag. Judge Shashi H. Kewalramani*<br><br>**PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY BY DEFENDANTS' EXPERT JAMES BORDEN**<br><br>PRE-TRIAL CONF: August 23, 2021<br>TIME: 9:00 a.m.<br>CTRM:1 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff TRACY ALVES hereby moves in limine for an order excluding testimony at trial from Defendants' expert James Borden. Plaintiff makes this Motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, and Federal Rules of Evidence 401, 402, 403, and 702.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel on July 9, 2021, during which no resolution could be reached. This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities that follows; The Declaration of T. Kennedy Helm, IV in Support of Plaintiff's Motions in Limine Numbers 1 and 2; the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED:  July 26, 2021

**LAW OFFICES OF DALE K. GALIPO**
**THE LAW OFFICES OF JOHN BURTON**
**HELM LAW OFFICE, PC**


By  */s/ T. Kennedy Helm, IV*

_____

Dale K. Galipo
John Burton
T. Kennedy Helm, IV
Hang D. Le
Attorneys for Plaintiff TRACY ALVES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

III.  ARGUMENT ......................................................................................................... 4

    A.   Mr. Borden, a high-school graduate, does not have the required expertise under Federal Rule of Evidence 702(a) to qualify as an expert by knowledge, skill, experience, training, or education regarding "human factors," related behavioral-science topics, and California and national law-enforcement training and policy standards. .......................................................................................................... 4

    B.   Mr. Borden's proposed testimony tells the jury what inferences to draw from the video evidence, and so it will not help the jury to understand the evidence, or to determine a fact in issue, as Federal Rule of Evidence 702(a) requires. ......................... 7

    C.   Mr. Borden fails to base his testimony on sufficient facts or data, and he does not apply reliable principles and methods to the facts of the case, making his proposed testimony unreliable under Federal Rule of Evidence 702(b)–(d)............. 11

    D.   Mr. Borden's proposed testimony about creating the Incident Reconstruction Timeline and the Composite Video, and his police-practices-related testimony, would waste time and constitute the needless presentation of cumulative evidence under Federal Rule of Evidence 403, because Plaintiff would stipulate to the authenticity of the Composite Video, and Defendants have already disclosed Robert Fonzi as their police-practices expert.......................................................................................... 13

III.  CONCLUSION..................................................................................................... 14

i

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Cases</u>**

*A.B. v. County of San Diego*, No. 18CV1541-MMA-LL,
   2020 WL 4431982 (S.D. Cal. July 31, 2020) ...................................................... 8

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   709 F.3d 872 (9th Cir. 2013) ................................................................13

*Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. County*, No. C18-55 TSZ,
   2019 WL 8273355 (W.D. Wash. May 9, 2019) ...................................................... 6

*Barnes v. City of Pasadena*, No. 10-CV-00470-JHN-PJWX,
   2011 WL 13143536 (C.D. Cal. May 5, 2011) ...................................................... 8

*Borja v. Gonzalez*, No. 10CV1379 WMC,
   2011 WL 5546874 (S.D. Cal. Nov. 14, 2011) ......................................................10

*Cabrera v. Cordis Corporation*,
   134 F.3d 1418 (9th Cir. 1998) ................................................................12

*Chapman v. Maytag Corporation*,
   297 F.3d 682 (7th Cir. 2002) ................................................................ 6

*Cole v. Perry*, No. 1:16-CV-3081-WTL-MJD,
   2019 WL 4165304 (S.D. Ind. Apr. 30, 2019) ...................................................... 6

*Cole v. Perry*, No. 1:16-CV-3081-WTL-MJD,
   2019 WL 2210809 (S.D. Ind. May 22, 2019) ...................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ................................................................2, 3, 4, 11

*Elsayed Mukhtar v. California State University, Hayward*,
   299 F.3d 1053 (9th Cir. 2002) ................................................................ 3

*Estate of Collins v. Wilburn*,
   253 F. Supp. 3d 989 (E.D. Ky. 2017) ...................................................... 8

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

*Farmer v. Las Vegas Metropolitan Police Department*, No. 218CV00860GMNVCF,

   2020 WL 5763607 (D. Nev. Sept. 28, 2020) ................................................................. 6, 12

*Highland Cap. Mgmt., L.P. v. Schneider*,

   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................................................. 8

*In re Countrywide Financial Corporation Mortgage-Backed Securities Litigation*,

   984 F. Supp. 2d 1021 (C.D. Cal. 2013) ................................................................. 4

*Kennedy v. Collagen Corp.*,

   161 F.3d 1226 (9th Cir. 1998) ................................................................. 13

*Kumho Tire Co., Ltd. v. Carmichael*,

   526 U.S. 137 (1999) ................................................................. 3

*Lam v. City of San Jose*, No. 14-CV-00877-PSG,

   2015 WL 6954967 (N.D. Cal. Nov. 10, 2015) ................................................................. 8

*Lust By & Through Lust v. Merrell Dow Pharmaceuticals, Inc.*,

   89 F.3d 594 (9th Cir. 1996) ................................................................. 4

*Primiano v. Cook*,

   598 F.3d 558 (9th Cir. 2010), *as amended* ................................................................. 3

*QR Spex, Inc. v. Motorola, Inc.*, No. CV 03-6284-JFW(FMOX),

   2004 WL 5642907 (C.D. Cal. Oct. 28, 2004) ................................................................. 11

*Sherrod v. McHugh*,

   334 F. Supp. 3d 219 (D.D.C. 2018) ................................................................. 8

*Tucker v. Cty. of Riverside, California*, No. EDCV1602275JGBDTBX,

   2018 WL 6017036 (C.D. Cal. May 23, 2018) ................................................................. 3

*United States v. Barnard*,

   490 F.2d 907 (9th Cir. 1973) ................................................................. 10

*United States v. Binder*,

   769 F.2d 595 (9th Cir. 1985) ................................................................. 8, 10

# <u>TABLE OF AUTHORITIES (CONTINUED)</u>

*United States v. Hanna*,

   293 F.3d 1080 (9th Cir. 2002) ...................................................................7

*United States v. Hermanek*,

   289 F.3d 1076 (9th Cir. 2002) .................................................................12

*United States v. Lukashov*,

   694 F.3d 1107 (9th Cir. 2012) ...................................................................7

*United States v. Morales*,

   108 F.3d 1031 (9th Cir. 1997) ...................................................................7

*United States v. Rahm*,

   993 F.2d 1405 (9th Cir. 1993) ...................................................................7

*United States v. Valencia-Lopez*,

   971 F.3d 891 (9th Cir. 2020) ...................................................................12

*United States v. W.R. Grace*,

   504 F.3d 745 (9th Cir. 2007) ...................................................................11

*Zeen v. Cty. of Sonoma*, No. 17-CV-02056-LB,

   2018 WL 3769867 (N.D. Cal. Aug. 9, 2018) ...........................................8

## <u>Federal Rules</u>

Federal Rule of Evidence 402 .....................................................................11

Federal Rule of Evidence 403 .................................................... 2, 11, 13, 14

Federal Rule of Evidence 901 .....................................................................13

Federal Rule of Evidence 702 ........................................................ 3, 4, 7, 8, 11

# I.      INTRODUCTION

In this § 1983 wrongful-death case, Plaintiff contends that Riverside County Sheriff's Deputies Sonia Gomez and Brian Keeney held an agitated and psychotic Kevin Niedzialek face down on the ground after he was handcuffed, impairing his breathing. Plaintiff contends that the deputies failed to monitor Mr. Niedzialek's breathing and pulse, and that he suffered a cardiac arrest as the Deputies chatted. Although paramedics resuscitated him several minutes later, the lack of oxygenated blood resulted in a terminal anoxic brain injury.

Defendants have disclosed James Borden, a high-school graduate, as a retained expert, whose 46-page report discloses two areas of proposed testimony. Plaintiff chose not to take his deposition.

First, Defendants offer Mr. Borden to explain his "review and analysis regarding the incident related to the use-of-force in subduing and controlling the subject of the contact, Kevin R. Niedzialek, from a police performance dynamics perspective" Ex. 1 to the Declaration of T. Kennedy Helm, IV in Support of Plaintiff's Motions in Limine Nos. 1 & 2, Borden Rule 26 Report and C.V., at COR 02752. Mr. Borden includes six opinions based on his claimed expertise in "law enforcement procedure, law enforcement training & associated human performance and force dynamics relevant to law enforcement training and police use-of-force and decision-making." Ex. 1, at COR 02795. To the extent this testimony purports to be scientific, Mr. Borden lacks the qualifications to so testify, as other federal district courts, acting as *Daubert* gatekeepers, have found. His proposed testimony lacks reliability in its methodology, failing to apply "human performance" concepts to the facts, and citing no peer-reviewed studies or specific policies to explain how he reaches his conclusions. Instead, Defendants propose that Mr. Borden tell the jury how he thinks the video evidence should be viewed, and which inferences and conclusions the jury should draw. Moreover, because Defendants intend to call Robert Fonzi, a qualified police-practices expert, Mr.

Borden's unqualified proposed police-practices testimony would be cumulative and should be excluded under Fed. R. Evid. 403.

Second, Defendants propose that Mr. Borden testify about creating Defendants' demonstrative evidence: (1) a composite video, which synchronizes Deputy Gomez's body-worn camera video with a bystander's cell-phone video (and which therefore shows an angle that the body-worn camera does not); and (2) an "Incident Reconstruction Timeline." Mr. Borden plans to testify about "the procedures utilized to create demonstrative PDF and video exhibits[,]" which "included the construction of annotated PDF and synchronized video exhibits . . . and synchronized digital video examples identifying actions and positions relevant to the referenced event." Ex. 1, at COR 02752. Plaintiff has stipulated to the composite video, and have suggested that all counsel and witnesses refer to it and its timer throughout the presentation of evidence so that there is a consistent record on timing. Evidence concerning its creation should be excluded under Fed. R. Evid. 403. On the Timeline, Mr. Borden should not be allowed to testify on the "procedures utilized" because defense expert Rod Englert created it. Fed. R. Evid. 403.

## II.   LEGAL STANDARD

This Court has explained the countervailing interests at play when exercising the responsibility of a *Daubert* gatekeeper:

> Rule 702 should be applied consistent with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion testimony.' " [*Daubert*, 509 U.S. at 588]. A trial court's "gatekeeping" obligation to admit only expert testimony that is both reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063–64 (9th Cir. 2002), *amended sub nom. Mukhtar v. California State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003), *and overruled by Est. of*

*Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014). Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010).

> The trial court is accorded wide discretion when acting as gatekeepers for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999). As an initial matter, the court must determine if a witness has the required expertise, whether it be "knowledge, skill, experience, training, or education" under Rule 702(a). Next, Courts must ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The expert's opinion must be based on "scientific knowledge;" opinions based on unsubstantiated generalizations or opinions not derived by the scientific method must be excluded. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

*Tucker v. Cty. of Riverside, California*, No. EDCV1602275JGBDTBX, 2018 WL 6017036, at *3 (C.D. Cal. May 23, 2018) (parallel citations omitted). As explained below, Mr. Borden lacks the requisite education and expertise to opine about "human factors" or police-practices in California or nationally, and he fails to provide evidentiary support, or to explain, his conclusory opinions.

//
//
//
//
//
//
//

### III.   ARGUMENT

**A. Mr. Borden, a high-school graduate, does not have the required expertise under Federal Rule of Evidence 702(a) to qualify as an expert by knowledge, skill, experience, training, or education regarding "human factors," related behavioral-science topics, and California and national law-enforcement training and policy standards.**

In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702. *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1026 (C.D. Cal. 2013) (citing *Daubert*, 509 U.S. at 597). Defendants must establish the admissibility of Mr. Borden's proposed testimony, *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996), by showing that: (1) Mr. Borden is qualified to render the opinion; and (2) the opinion offered has adequate factual and scientific support for that opinion. *Daubert*, 509 U.S. at 592–93.

Mr. Borden claims to be "an expert in police performance dynamics as they pertain to use of force decision-making and reaction time." Ex. 1, at COR 02750.  He also claims expertise in "Law Enforcement Procedure, Law Enforcement Training & associated Human Performance and Force Dynamics relevant to law enforcement training and Police Use-of-force and decision-making." Ex. 1, at COR 02795. Mr. Borden's "overarching opinion" is that "decisions made by the deputies to use force in this incident were dictated by the actions of Niedzialek, and were not subjective decisions made by the deputies."  Ex. 1, at COR 02756. Mr. Borden spends several pages in his Rule 26 Report explaining behavioral-science-sounding "[k]ey terminology used in this review and analysis[,]" including "Consequentalism," "Time Compression," "Focus of Attention," and "Threat Cues." Ex. 1, at COR 02757—2760. He claims that all of his opinions "are made to a reasonable degree of scientific or technical probability or certainty based on this expert's review of the available known

forensic and witness evidence and this expert's background, training, and experience." Ex. 1, COR 02774.

Yet Mr. Borden lacks the educational background to testify on behavioral-science topics. His 15-page C.V. does not contain a section on "Education." Ex. 1, at COR 02796–02811. Mr. Borden is not a kinesiologist, a biomechanical engineer, a psychologist, or a doctor. Ex. 2, Borden *Hermosillo* Depo., 115:13–24. He has never taken a psychology class. *Id.* at 150:3–4. Mr. Borden has some college credits but no degree. *Id.* at 47:6–13. Besides "30 credits in criminal justice," he has "15 additional credits with a focus on human behavior and psychology at CSN [College of Southern Nevada, a community college]." Ex. 1, at COR 02798.

Nor is Mr. Borden qualified by training and experience to opine on "human performance," "human factors," or other topics. Mr. Borden touts that he is "currently a member of the HFES (Human Factors and Ergonomics Society) as a professional working in the capacity of Senior Instructor for the Force Science Institute, lecturing on the application of the scientific study of human performance and decision making related to law enforcement." Ex. 1, at COR 02794. But anyone—regardless of expertise, education, or training—may join the HFES at a low level if they are interested in the field and pay membership dues. *See* https://www.hfes.org/Membership/Join-HFES. Mr. Borden's capacity as a "Senior Instructor for the Force Science Institute" does not qualify him as an expert, because the Force Science Institute is known for controversial non-peer-reviewed studies geared to supporting officers' uses of force. Ex. 3, Matt Apuzzo, *Training Officers to Shoot First and He Will Answer Questions Later*, N.Y. Times, Aug. 1, 2015.

Mr. Borden has not authored any peer-reviewed articles to support his opinions, having only gathered data for the Force Science Institute. As Mr. Borden admits, he has "participated in scientific studies conducted by The Force Science Institute as a consultant," where he "assisted in gathering information and recording empirical data on the study and the associated findings." Ex. 1, at COR 02798. Mr. Borden claims

that the "subsequent study findings and data are peer reviewed and published as industry journals, industry periodicals, and web-based articles." Ex. 1, at COR 02798. Nowhere in his Rule 26 Report, however, does Mr. Borden cite these alleged peer-review studies for which he gathered data.

Mr. Borden's experience as a law-enforcement officer is no substitute for scientific training. Mr. Borden claims that "[m]y training and background have given me first-hand knowledge, extensive application experience, and the objective basis to review peace officers' actions and the time compressed decisions involved in the use of non-deadly and deadly force." Ex. 1, at COR 02794. But, as one court stated in excluding Mr. Borden's testimony on such scientific topics, "'twenty years of experience in law enforcement with five years observing human interactions as a patrol officer and one year as an undercover detective,' does not make Mr. Borden an expert in the academic field of behavioral science." *Cole v. Perry*, No. 1:16-CV-3081-WTL-MJD, 2019 WL 4165304, at *6 (S.D. Ind. Apr. 30, 2019), *on reconsideration*, No. 1:16-CV-3081-WTL-MJD, 2019 WL 2210809 (S.D. Ind. May 22, 2019) (citing *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) ("Personal observation is not a substitute for scientific methodology, and is insufficient to satisfy Daubert's most significant guidepost.")). A law-enforcement career does not give Mr. Borden technical or specialized knowledge in the fields of human performance and human factors. Personal observation is not scientific methodology and does not satisfy *Daubert*.

Due to his lack of education, training, and experience, federal courts in § 1983 excessive-force cases have excluded Mr. Borden from testifying about human factors and behavior, and other behavioral-science concepts. *See, e.g., Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cty.*, No. C18-55 TSZ, 2019 WL 8273355, at *1 (W.D. Wash. May 9, 2019) ("Borden does not have the requisite training or education to provide expert testimony about matters of human behavior and psychology . . . [a]s a result of . . . lack of qualification, and unsound methodology, James W. Borden will not be permitted to opine about 'human factors,' 'human movement,' or 'human

performance.'"); *Farmer v. Las Vegas Metro. Police Dep't*, No. 218CV00860GMNVCF, 2020 WL 5763607, at *4 (D. Nev. Sept. 28, 2020), aff'd sub nom. *TRINITA FARMER, Plaintiff-Appellee, v. KENNETH LOPERA, Defendant-Appellant, & LAS VEGAS METROPOLITAN POLICE DEPARTMENT; et al., Defendants.*, No. 20-17008, 2021 WL 3087880 (9th Cir. July 22, 2021) (facing a motion in limine on Mr. Borden's proposed testimony on human factors and behavior, the defense stipulated that "Borden 'will not mention human factors and behavior, purport to be an expert on them, or offer any opinions on human factors and behavior.").

Just as Mr. Borden is not qualified by "knowledge, skill, experience, training, or education" as an expert in the field of behavioral science, he is also not qualified to opine about California (or national) generally-accepted police policy and training. Mr. Borden began with the Henderson, Nevada Police Department as a patrol officer in 1997, and retired in 2018 as a "Sergeant, Use-of-Force Training and Analysis Unit, Training Bureau, P.E.A.P." Ex. 1, at COR 02796. He has no certifications from the California Commission on Peace Officer Standards and Training. Ex. 1, at COR 02797. Simply put, Defendants have failed to establish that Mr. Borden is an expert in the field of behavioral science or California, or national, police training and policy standards, or in anything else.

**B. Mr. Borden's proposed testimony tells the jury what inferences to draw from the video evidence, and so it will not help the jury to understand the evidence, or to determine a fact in issue, as Federal Rule of Evidence 702(a) requires.**

"Expert testimony is admissible under Fed. R. Evid. 702 if it addresses an issue 'beyond the common knowledge of the average layperson.'" *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (quoting *United States v. Morales*, 108 F.3d 1031, 1039 (9th Cir. 1997) (en banc)); *see also United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) ("[T]his circuit continues to guard—perhaps too jealously—from expert elucidation, areas believed to be within the jurors' common understanding."). A district

court should exercise its discretion to exclude an expert witness's testimony "'if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury.'" *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) (quoting *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), *overruled by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997)).

Expert opinion testimony that resolves a factual matter for the jury, telling it what a video or photograph depicts, or what the expert believes actually occurred during the incident, does not help the jury. *See, e.g., Barnes v. City of Pasadena*, No. 10-CV-00470-JHN-PJWX, 2011 WL 13143536, at *3 (C.D. Cal. May 5, 2011), *aff'd,* 508 F. App'x 663 (9th Cir. 2013) (citing Fed. R. Evid. 702) (excluding testimony of proffered expert who enhanced a photograph and claimed it showed the presence of a gun, because "[w]hat a photograph depicts is readily visible to a lay person and is not a proper subject of expert testimony."); *Zeen v. Cty. of Sonoma*, No. 17-CV-02056-LB, 2018 WL 3769867, at *2 (N.D. Cal. Aug. 9, 2018) (citing *Lam v. City of San Jose*, No. 14-CV-00877-PSG, 2015 WL 6954967, at *2 (N.D. Cal. Nov. 10, 2015) ("[Forensic audio/video expert] may explain how he enhanced the audio and play the enhanced audio to the jury . . . However, he may not testify as to what he believes [defendant] said [on the recording].")); *A.B. v. Cty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982, at *2 (S.D. Cal. July 31, 2020) (excluding expert witness testimony as unhelpful to the jury where the expert witness would "take the witness stand and recount his observations from the video evidence, since the jury is no less capable of viewing the evidence and drawing their own conclusions."); *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 271–72 (D.D.C. 2018) (quoting *Est. of Collins v. Wilburn*, 253 F. Supp. 3d 989, 992 (E.D. Ky. 2017) ("[T]here is little need for Plaintiff's expert to tell the jury whether the officers' actions were objectively reasonable under the circumstances because a video captures the incident.") (citations omitted); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) ("While an expert must of course rely on facts or data in formulating an expert opinion . . . an expert cannot be presented

to the jury solely for the purpose of constructing a factual narrative based upon record evidence.")).

Mr. Borden should not be permitted to tell the jury what the video evidence shows. In a section of his report entitled "Deputy Plan and Tactics: Police Performance Dynamics Background," Mr. Borden writes:

> [D]espite aggressive resistance, both deputies were able to place Niedzialek in handcuffs. Niedzialek continued to aggressively struggle against both deputies as deputies continued to physically control Niedzialek. Niedzialek then went unresponsive. Niedzialek was then turned onto his back as deputies continued to monitor his breathing; seconds later medical personnel arrived and Deputy Keeney was administering CPR.

Ex. 1, at COR 02755. Such testimony merely tells the jury how to view the video, leaving out the 4 minutes between the end of  the struggle and the rolling over, and so does not help the jury, which may interpret the video and determine whether Mr. Niedzialek's struggle with the deputies was "aggressive resistance," or whether he was trying to put himself in a better position for breathing. The jury may also view the video and decide for itself whether Deputies Keeney and Gomez actually "monitored his breathing."

Mr. Borden's Sixth Opinion, "Continued Restraint," sounds like a defense attorney's closing argument:

> Based on the unpredictable actions of Niedzialek, and the fact that Niedzialek was continuing to resist and struggle against Deputies after he had been placed in handcuffs, Deputy Keeney and Deputy Gomez appropriately continued to physically control Niedzialek by cautiously restricting Niedzialek's movements. Based on the proximity of both Deputy Keeney and Gomez to Niedzialek, they were able to confirm that Niedzialek was still breathing based on the movement in his chest. However, this confirmation was based only on the movement (rise and fall) of Niedzialek's chest and back. Determinations were not being made as

to the number of respirations or the depth of the respirations. Deputy Keeney observed that the breathing pattern had slowed which was consistent with his requests for Niedzialek to "relax" and to "settle down."

Ex. 1, at COR 02757. Mr. Borden would tell the jury how it should view Mr. Niedzialek's and the deputies' actions on the video after Mr. Niedzialek was handcuffed. This "expert" testimony tells the jury the inferences they should draw from the video evidence. The Court should therefore exclude this testimony.

This Court should also exclude Mr. Borden's testimony about state of mind or credibility, which also does not help the jury. *Binder*, 769 F.2d at 602 (en banc) ("Credibility is a matter to be decided by the jury.") (citing *United States v. Barnard*, 490 F.2d 907, 912–13 (9th Cir. 1973)); *Borja v. Gonzalez*, No. 10CV1379 WMC, 2011 WL 5546874, at *2 (S.D. Cal. Nov. 14, 2011) ("Expert testimony is not required to adequately evaluate evidence of Defendants' state of mind at the time of the incident.").

Here, Mr. Borden would have the jury believe that he knows whether Deputies Keeney's and Gomez's "perceptions" were "accurate." In his Third Opinion, "Opinion – Perceptions," Mr. Borden would tell the jury "that the stated perceptions of Deputy Gomez and Deputy Keeney were accurate and the subsequent decisions based on the stated perceptions were within the training and policy standards of the Riverside County Sheriff's Department." Ex. 1, at COR 02756. Mr. Borden cannot opine about the Deputies' subjective states—that their "perceptions were accurate."

Lastly, "[e]xpert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful." *Daubert*, 509 U.S. at 591. *QR Spex, Inc. v. Motorola, Inc.*, No. CV 03-6284-JFW(FMOX), 2004 WL 5642907, at *8 (C.D. Cal. Oct. 28, 2004).

Here, Mr. Borden's Fourth Opinion, "Performance Factors," regarding Deputy Gomez's use of the Taser, lacks relevance. Ex. 1, at COR 02756–02757. Plaintiff does not contest the Deputies' actions and omissions until the point when they handcuffed Mr. Niedzialek behind his back. Because Plaintiff does not contend that Deputy Gomez's use of the Taser was unlawful, testimony about it is irrelevant and

1  inadmissible. Fed. R. Evid. 402. Such testimony about irrelevant pre-handcuffing uses
2  of force would also waste the jury's time. Fed. R. Evid. 403.

3       **C. Mr. Borden fails to base his testimony on sufficient facts or data, and**
4          **he does not apply reliable principles and methods to the facts of the**
5          **case, making his proposed testimony unreliable under Federal Rule of**
6          **Evidence 702(b)–(d).**

7       Under Rule 702, an expert witness may provide opinion testimony if 'the
8  testimony is based upon sufficient facts or data[.]'" *United States v. W.R. Grace*, 504 F.3d
9  745, 759 (9th Cir. 2007) (quoting Fed. R. Evid. 702).

10      Here, Mr. Borden's First Opinion, his "overarching opinion," is that "decisions
11 made by the deputies to use force in this incident were dictated by the actions of
12 Niedzialek, and were not subjective decisions made by the deputies." Ex. 1, at COR
13 02756. But Mr. Borden offers no citations to peer-reviewed studies, law-enforcement
14 training and policy documents, or anything else to support his opinion. Mr. Borden's
15 Second Opinion, regarding "Decision-Making & Training," is that "Deputy Gomez
16 and Deputy Keeney made decisions that were consistent with the training and the
17 applicable policies related to this event based on the circumstances both deputies
18 faced."  Ex. 1, at COR 02756. Mr. Borden's Fifth Opinion, "Documented Training,"
19 states:

20      Given the officers documented training with the Riverside County Sheriff's
21      Department, accepted police practices and existing policy, reported information
22      at issue, deputy performance dynamics and suspect/officer interaction and
23      movement dynamics, Deputy Gomez's use of force including her decision as to
24      when to initiate the use of force (TASER)– were consistent with an immediate
25      threat or perceived threat to Deputy Keeney based on the context of the event
26      and the present need to subdue and control Niedzialek.

27 Ex. 1, at COR 02757. But nowhere in his report does Mr. Borden cite any specific
28 "applicable policies" and explain how they apply to the facts here. Instead, Mr. Borden

1   provides a single footnote to "Learning domain 20, Use-of-Force, California P.O.S.T."

2   Ex. 1, at COR 02756.

3       Indeed, another federal court has expressed concern with the reliability of

4   Mr. Borden's proposed police-practices testimony, stemming from "numerous

5   conclusory statements on this subject as stated in Borden's expert reports[,]" which,

6   though relying in specific facts for support, "do not directly cite the applicable police

7   standards used to reach such conclusions[,]" and, if they do, identified standards that

8   "are broad, general, and somewhat removed from the specific actions" that Mr. Borden

9   opines were within police standards. *Farmer*, 2020 WL 5763607, at *5.

10      Reliability also requires the expert to offer explanations to support conclusions.

11   *See United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) ("[B]y never

12   explaining how his expertise lent itself to that conclusion, we cannot sort out what

13   'reliable principles and methods underlie the particular conclusions offered.' "

14   (emphasis in original) (quoting *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir.

15   2002))). A district court acts within its discretion in excluding an expert witness's

16   testimony that provides no explanation of precisely how the expert reached his or her

17   conclusions.  *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422–23 (9th Cir. 1998).  Stated

18   differently, "[t]he *Daubert* duty is to judge the reasoning used in forming an expert

19   conclusion."  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998); *see also*

20   *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 883 (9th Cir. 2013)

21   ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions,

22   but not exclude opinions merely because they are impeachable.").

23      Here, Mr. Borden does not explain how he has arrived at his conclusions.

24   Mr. Borden claims that the "third step" of his claimed methodology, "Comparison with

25   Nationally-Accepted Police Training & Practices" involves:

26       comparing what the officer/s did and why, then applying the objective standard

27       with various police training and accepted police practice. Nationally accepted

28       training and practice include relevant Supreme Court cases; departmental policies

and procedures; applicable statewide police training programs/systems; model policies, training, and research from such institutions as the International Association of Chiefs of Police, Police Executive Research Forum, National Criminal Justice Reference Service, Commission on Accreditation for Law Enforcement Agencies, Public Agency Training Council, and the Northwestern University Center for Public Safety.

Ex. 1, at COR 02761. Instead of citing and explaining how these "objective standards" apply to the facts here, Mr. Borden provides only conclusory statements.

**D. Mr. Borden's proposed testimony about creating the Incident Reconstruction Timeline and the Composite Video, and his police-practices-related testimony, would waste time and constitute the needless presentation of cumulative evidence under Federal Rule of Evidence 403, because Plaintiff stipulates to the Composite Video, and Defendants have already disclosed Robert Fonzi as their police-practices expert.**

Plaintiff does not object to the authenticity, Fed. R. Evid. 901, of the Composite Video that Mr. Borden created, thereby making Mr. Borden's proposed testimony on "Demonstrative Processes re Video & Stills" cumulative and unnecessary. Ex. 1, at COR 02763–02774. In light of Plaintiff's stipulating that the Composite Video is what it claims to be, the jury does not need to hear Mr. Borden's proposed testimony about how, "[p]rior to the forensic examination of the video evidence," he "completed a series of analytical procedures regarding the body worn camera and cellular phone video footage[,]" including "frame analysis, frame rate verification, macro block analysis, and an examination of a related audio stream." Ex. 1, at COR 02752. Such dry, technical testimony would waste the jury's time. Fed. R. Evid. 403.

Similarly, Mr. Borden's testimony about the appropriateness of the deputies' post-handcuffing uses of force overlaps significantly with the Defendants' police-practices expert, Mr. Fonzi, and should be excluded as cumulative. Fed. R. Evid. 403.

1   Mr. Borden claims, "[t]he purpose and scope of this report is to conduct review and

2   analysis regarding the incident related to the use-of-force in subduing and controlling

3   the subject of the contact, Kevin R Niedzialek, from a police performance dynamics

4   perspective." COR 02752. Elsewhere he claims to have compared the deputies' actions

5   to "Nationally-Accepted Training & Practices." Ex. 1, at COR 02761. But Mr. Fonzi

6   will testify about "opinions with respect to the police procedures; specifically, the issues

7   related to reasonable suspicion, probable cause, use of force, involving deputies with

8   the County of Riverside Sheriff's Department." Ex. 4, Robert Fonzi Rule 26 Report, at

9   COR 03100. Mr. Borden's police-practices testimony would constitute cumulative

10  evidence and would waste the jury's time. Fed. R. Evid. 403.

11  **IV.   CONCLUSION**

12          For each of the foregoing reasons, Plaintiff respectfully requests an order

13  excluding Mr. Borden from testifying at trial.

14  Respectfully submitted,

15

16  DATED:  July 26, 2021            **LAW OFFICES OF DALE K. GALIPO**
                                      **THE LAW OFFICES OF JOHN BURTON**
17                                    **HELM LAW OFFICE, PC**

18

19

20                                    By  */s/ T. Kennedy Helm, IV*
                                         Dale K. Galipo
21                                       John Burton
                                         T. Kennedy Helm, IV
22                                       Hang D. Le
                                         Attorneys for Plaintiff TRACY ALVES
23

24

25

26

27

28