Eugene P. Ramirez, Esq. (State Bar No. 134865)
  *epr@manningllp.com*
Tony M. Sain, Esq. (State Bar No. 251626)
  *tms@manningllp.com*
Garros Chan, Esq. (State Bar No. 320561)
  *gxc@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants,
COUNTY OF RIVERSIDE (erroneously named as separate parties as COUNTY OF RIVERSIDE and RIVERSIDE SHERIFF'S DEPARTMENT), SHERIFF-CORONER CHAD BIANCO, DEPUTY SONIA GOMEZ, and DEPUTY BRIAN KEENEY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ALVES, Individually and as Successor in Interest for KEVIN R. NIEDZIALEK, deceased,<br><br>    Plaintiffs,<br><br>v.<br><br>RIVERSIDE COUNTY, RIVERSIDE SHERIFF'S DEPARTMENT, SHERIFF-CORONER CHAD BIANCO, DEPUTY SONIA GOMEZ, DEPUTY BRIAN KEENEY, and DOES 3-10,<br><br>    Defendants. | Case No. 5:19-CV-02083-JGB(SHKx)<br>*[Hon. Jesus G. Bernal, District Judge; Hon. Shashi H. Kewalramani, Magistrate Judge]*<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Complaint Filed:  07/17/2020<br>Pre-Trial Conf.:   08/23/2021<br>Trial Date:        09/14/2021 |

**TO THE HONORABLE COURT AND TO ALL PARTIES AND COUNSEL:**

    Defendants, COUNTY OF RIVERSIDE (erroneously named as separate parties as COUNTY OF RIVERSIDE and RIVERSIDE SHERIFF'S DEPARTMENT), SHERIFF-CORONER CHAD BIANO, DEPUTY GOMEZ and

DEPUTY KEENEY (collectively herein after as "Defendants") hereby submit the following Memorandum of Contentions of Fact and Law, pursuant to Federal Rule of Civil Procedure 16; United States District Court, Central District of California Local Rule 16-4 *et seq.*; and the applicable Orders of the Court.

Defendants reserve the right to amend this memorandum.

DATED: August 2, 2021

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: _____/s/ Garros Chan_____
Tony M. Sain, Esq.
Garros Chan, Esq.
Attorneys for Defendants,
COUNTY OF RIVERSIDE (erroneously named as separate parties as COUNTY OF RIVERSIDE and RIVERSIDE SHERIFF'S DEPARTMENT), SHERIFF-CORONER CHAD BIANCO, DEPUTY SONIA GOMEZ, and DEPUTY BRIAN KEENEY

# TABLE OF CONTENTS

1. OVERVIEW OF DEFENDANTS' FACT CONTENTIONS. ........................ 2
   A. Niedzialek's History Of Drug Abuse. .................................................. 2
   B. Reports To Sheriff's Dept. ................................................................... 2
   C. Initial Contact. ..................................................................................... 2
   D. 1st TASER Discharge. ........................................................................ 3
   E. 2nd TASER Discharge. ....................................................................... 3
   F. Hands-On Restraint. ............................................................................ 4
   G. Post-Handcuff Restraint. ..................................................................... 4
2. OVERVIEW OF DEFENDANTS' CONTENTIONS OF LAW. .................... 7
3. CLAIMS AND DEFENSES. ........................................................................... 7
   A. Plaintiff's Operative Claims ................................................................ 7
   B. Elements Required to Establish Plaintiff's Operative Claims. ............ 8
   C. Operative Affirmative Defenses of Defendants and Elements of Proof. .................................................................................................. 10
4. OPERATIVE PLEADINGS. .......................................................................... 11
5. JURY TRIAL. ................................................................................................ 12
6. ANTICIPATED EVIDENTIARY ISSUES. ................................................... 12
7. ADMITTED AND STIPULATED FACTS. .................................................. 12
   A. Admitted Facts. .................................................................................. 12
   B. Stipulated and Uncontroverted Facts. ............................................... 12
8. PENDING OR CONTEMPLATED LAW AND MOTION MATTERS. ...... 13
9. BIFURCATION OF ISSUES FOR TRIAL. .................................................. 17
10. USE OF ELECTRONICS AND EQUIPMENT IN COURTROOM. ............ 18

# MEMORANDUM OF CONTENTIONS OF LAW AND FACT

## 1. OVERVIEW OF DEFENDANTS' FACT CONTENTIONS.

### A. Niedzialek's History Of Drug Abuse.

Until about 2 years prior to the incident at issue in this case, Niedzialek had been a recovering and relapsing drug addict, including abuse of methamphetamine. However, for about 1 ½ to 2 years leading up to the incident, Niedzialek had been completely sober from drugs and alcohol. Then, circa July 2019, Niedzialek relapsed and began abusing drugs, including methamphetamine. When he relapsed, Niedzialek was staying temporarily with a friend at Apartment 27A in a complex located at 42200 Moraga Road in Temecula, California.

During the early afternoon of July 29, 2019, before any contact with any Riverside County Sheriff Department ("RCSD") deputies that day, Niedzialek sustained a large laceration on his head, apparently while inside the apartment. The origin of this bloody head injury is unclear.

### B. Reports To Sheriff's Dept.

Starting shortly after 2:10 p.m., RCSD dispatch received several 9-1-1 calls from Niedzialek's neighbors: who reported noises, yelling and other actions by an unarmed man with a bloody head wound. The subject was reportedly wearing pajama pants with no shirt, and he was bleeding from the head.

### C. Initial Contact.

Shortly after 2:30 p.m., RCSD Deputies Brian Keeney and Sonia Gomez arrived separately at the apartment complex, and they approached the scene from different directions.

Deputy Keeney was not wearing a body worn camera ("BWC"). When Deputy Keeney first saw Niedzialek and his head injury, he requested medical aid to respond to the location: before any force was used.

Deputy Gomez activated her body-worn camera and shortly thereafter located Deputy Keeney encountering Niedzialek. At that time, Niedzialek had a visible

bleeding head wound, and he was speaking incoherently while sitting on the ground near one of the apartments. When Deputy Gomez walked up to Deputy Keeney and Niedzialek, and she saw Niedzialek's head injury, she also immediately requested a medical response.

### D. **1st TASER Discharge.**

Despite deputy commands, Niedzialek then stood and abruptly advanced toward Deputy Keeney. While charging toward Deputy Keeney, Niedzialek reached around to the back of his waistband. Believing Niedzialek was about to attack Deputy Keeney, and thus a threat, Deputy Gomez raised her TASER and aimed it at Niedzialek. For a split-second, Niedzialek then paused his charge toward Deputy Keeney. However, Niedzialek then resumed his quick advance on Deputy Keeney.

Believing Niedzialek was threatening harm to Deputy Keeney, Deputy Gomez deployed her TASER darts: striking him in the right bicep and right side of his ribcage. In response, Niedzialek then fell forward to the ground.

### E. **2nd TASER Discharge.**

Deputy Keeney then moved in to try to restrain Niedzialek; but as the suspect sat up, Deputy Keeney retreated and he tried to use verbal commands and words to calm Niedzialek down. Throughout this period, the deputies gave Niedzialek numerous commands to calm down, to turn around and put his hands behind his back, to lie down and to get on his stomach. Niedzialek did not comply with any of the deputies' commands.

After moving to his knees, Niedzialek then stood back up and again charged at Deputy Keeney. Perceiving the suspect to be threatening Deputy Keeney again, Deputy Gomez then pulled the trigger on her TASER device a second time. This sent a second 5-second discharge of low-amperage electricity through Niedzialek's skeletal muscles: again causing temporary neuromuscular incapacitation ("NMI"). As a result, Niedzialek again fell forward into the ground, landing near some dirt and a tree.

### F. Hands-On Restraint.

Both RCSD deputies then moved in to try to restrain Niedzialek on the ground. While trying to gain control of Niedzialek's left arm, at times, Deputy Keeney placed his right knee on or near Niedzialek's left shoulder blade. While trying to gain control of Niedzialek's right arm, and to keep him from getting up, Deputy Gomez retrieved her handcuffs.  Throughout this period, while Niedzialek was partially prone on the ground before handcuffing, Niedzialek actively resisted the deputies' restraint efforts: pulling his arms away from the deputies, lifting his hips and stomach off of the ground, rolling toward his side, and kicking.

At one point during this period, Deputy Keeney lifted his right knee off Niedzialek's left side near the mid-back or shoulder area.  During this pre-cuffing period, at one point, Niedzialek lifted his head and shoulders up off the ground while still kicking.  After about 35 seconds of struggle, Deputy Gomez was finally able to secure both of Niedzialek's hands behind his back in her handcuffs. After Niedzialek was handcuffed, Deputy Gomez then made a second call for medical aid to come to the scene: this was the third call for medical help, but the first post-TASERing.

Notably, for any and all of the deputies' uses of force or restraint that occurred prior to handcuffing completion, plaintiff concedes that such were consistent with standard police practices for the reasonable use of force.

### G. Post-Handcuff Restraint.

Despite being in handcuffs, Niedzialek continued what the deputies perceived as his active physical resistance: bucking, rolling his right abdomen off the ground, and kicking and flailing his legs.  In response, at one point, Deputy Keeney removed his right knee from Niedzialek's back/shoulder area.  Instead, Deputy Keeney crouched by Niedzialek's left shoulder with his right knee over, not on, the subject. Despite this, Niedzialek kicked and flailed his legs towards the deputies and he was bucking and rolling – raising his left hip off the ground in a manner the deputies perceived as further active resistance.

At this point, Deputy Gomez sat on her heels. Her left knee was on the ground and her right knee was approximately perpendicular to the ground. She did not place any of her knees on the subject at any time.

When a cuffed Niedzialek then rolled to his left side, Deputy Keeney placed his right knee on Niedzialek's left shoulder to try to prevent him from kicking. During this time, Deputy Keeney crouched with his left knee up and his right knee touching Niedzialek's mid-back or shoulder area. Throughout this period, Niedzialek continued moving in a manner the deputies construed as resistance: bending his knees, lifting his hips and kicking his legs as though trying to escape custody – which concerned the deputies as a potential public safety threat.

While Niedzialek continued to move in this manner, Deputy Keeney held Niedzialek's left, cuffed wrist while his right knee remained on the subject's left shoulder. However, as Niedzialek's movements decreased, after about 1 minutes and 18 seconds of struggle, Deputy Keeney lifted his right knee from Niedzialek's left shoulder. At this point, Niedzialek was grunting and breathing loudly. Deputy Keeney's right knee was then over, not on, Niedzialek. When Deputy Keeney moved his right knee off of Niedzialek's left shoulder at this point, there were no further knees placed on the subject's body for the remainder of the restraint.

At this point, the deputies continued to restrain Niedzialek. Deputy Keeney held the subject by placing his right hand on the subject's cuffed hands and his left hand on the subject's left shoulder blade. Deputy Gomez continued to restrain Niedzialek by placing her right hand on the mid-back of the subject, between the shoulder blades.

Then, while Deputy Keeney held the subject with a hand by the left shoulder and a hand on the cuffed hands at the subject's lower back, and Deputy Keeney held the subject with a single hand on his mid-back – and neither deputy was kneeling, sitting, or laying on the subject; Niedzialek was also then visibly breathing. About 4

minutes and 40 seconds after the handcuffs were connected, and about 3 minutes after the last moment when any knee was on the subject, Deputy Keeney observed that Niedzialek might no longer be breathing. At this point, Deputy Gomez removed her hand from Niedzialek's back. At that moment, there was a hand print on Kevin's back, indicating that blood was possibly not profusing. In order to check the subject's medical status, the deputies then rolled Niedzialek onto his back. Deputy Gomez then checked Niedzialek's pulse. Deputy Gomez stated that she detected that Niedzialek had a slow pulse. Deputy Keeney did not render CPR to Niedzialek before paramedics arrived because he saw Niedzialek breathing and Deputy Gomez indicated that Niedzialek had a pulse. According to the deputies' training, CPR was not appropriate under those circumstances.

About 2 minutes after the subject was flipped to a supine position, paramedic LaRusso then arrived at Niedzialek's location in the apartment complex. LaRusso quickly determined that Niedzialek was not breathing, and she instructed the deputies to begin CPR. Prior to this moment, both Deputy Keeney and Deputy Gomez were unaware that Niedzialek had any urgent or life-threatening medical problems. Deputy Keeney then began CPR with EMS until the subject was transported from the scene. However, Niedzialek later died, on July 30, 2019. Niedzialek's heart and lungs were then harvested for organ donation. Typically, damaged, injured, or diseased organs are not harvested for donation.

///
///
///

2. **OVERVIEW OF DEFENDANTS' CONTENTIONS OF LAW.**

Defendants' contentions of law (ultimate issue contentions) are as follows:

A. The use of force by the defendant deputies was objectively reasonable from the perspective of a reasonable peace officer under the totality of the circumstances – so as to require judgment for all defendants on all of plaintiff's operative claims.

B. Defendant County of Riverside did not have a policy, practice, or custom, or a failure to train that caused a constitutional violation of the decedent; and, absent any constitutional violation by its deputies, there can be no *Monell* liability, so as to require judgment for plaintiff's *Monell* claim.

C. Defendant deputies did not intentionally commit any violation of decedent's constitutional rights by threat, intimidation, or coercion as set forth in the Bane Act under California Civil Code § 52.1.

D. The restraint utilized and calls for medical services by defendant deputies are consistent with their training and procedures and, therefore, requires judgment for all defendants with respect to plaintiff's seizure-related negligence claim.

3. **CLAIMS AND DEFENSES.**

    A. **Plaintiff's Operative Claims**

In light of the applicable Orders of the Court, and dismissal or abandonment by plaintiff, the following are the remaining-operative claims at issue (plaintiff is pursuing the following claims against the following defendants):

1. A claim for **Excessive Force – Fourth and Fourteenth Amendment**, pursuant to 42 U.S.C. § 1983 [Count One] – by plaintiffs Tracy Alves on behalf of decedent Kevin Niedzialek against defendants County of Riverside, Sheriff-Coroner Chad Bianco, Deputy Gomez and Deputy Keeney;

2. A claim for ***Bane* Act Violation – California Law**, pursuant to Cal. Civ.

Code § 52.1 [Count Two] – by plaintiff Tracy Alves on behalf of decedent Kevin Niedzialek against defendants County of Riverside, Sheriff-Coroner Chad Bianco, Deputy Gomez, and Deputy Keeney;

3. A claim for **Assault and Battery – California Law** [Count Three] – by plaintiff Tracy Alves on behalf of decedent Kevin Niedzialek against defendants County of Riverside, Sheriff-Coroner Chad Bianco, Deputy Gomez, and Deputy Keeney;

4. A claim for **Police Negligence – California Law** pursuant to 42 U.S.C. § 1983 [Count Four] – by plaintiff Tracy Alves on her own behalf and on behalf of decedent Kevin Niedzialek against defendants County of Riverside, Sheriff-Coroner Chad Bianco, Deputy Gomez, Deputy Keeney; and

5. A claim for **Punitive Damages** by plaintiff against defendant Deputies Gomez and Keeney under federal law.

**B.** **Elements Required to Establish Plaintiff's Operative Claims.**

In addition to other pertinent instructions on the operative law as may be proffered to the Court by one or more of the parties, the following are the essential elements for proving plaintiff's operative claims by a preponderance of the evidence.

**1. Plaintiff's Excessive Force Claim (First Claim for Relief for § 1983 Excessive Force).**

a. That Riverside County Sheriff's Department Deputies Gomez and Keeney unreasonable/excessive force against Kevin Niedzialek; and

b. That such unreasonable/excessive force caused injury, damage, loss or harm to Kevin Niedzialek.

**2. Plaintiff's Claim for Violation of the Bane Act – Cal. Civ. Code § 52.1 (Second Claim for Relief).**

a. That defendant Deputies Gomez and Keeney interfered with or

attempted to interfere with Kevin Niedzialek's constitutional right to be free from unreasonable seizures, including unreasonable force, by threatening or committing violent acts;

b. That defendant Deputies Gomez and Keeney acted with the specific intent to deprive Kevin Niedzialek of his enjoyment of the interests protected by that right;

c. That Kevin Niedzialek was harmed; and

d. That the conduct of defendant Deputies Gomez and Keeney was a substantial factor in causing Kevin Niedzialek's harm.

**3. Plaintiff's Assault and Battery Claim (Third Claim for Relief).**

a. That defendant Deputies Gomez and Keeney used unreasonable force to arrest, and/or to overcome the resistance of Kevin Niedzialek;

b. That Kevin Niedzialek did not consent to the use of that force;

c. That Kevin Niedzialek was harmed; and

d. That defendant Deputies Gomez and Keeney's use of unreasonable force was a substantial factor in causing Kevin Niedzialek's harm.

**4. Plaintiff's Negligence Claim (Fourth Claim for Relief).**

a. That defendant Deputies Gomez and Keeney was negligent in using force or deliberately indifferent with the medical care of Kevin Niedzialek; and

b. That the negligence by defendant deputies regarding use of force or deliberate indifference with medical care was a substantial factor in causing Kevin Niedzialek's harm.

**5. Plaintiff's Punitive Damages Claim**

a. That defendant Deputies Gomez and Keeney's conduct during the incident was malicious, oppressive, and/or with reckless disregard for the rights of decedent Kevin Niedzialek.

### C. Operative Affirmative Defenses of Defendants and Elements of Proof.

As to the defenses asserted by Defendants which require affirmative proof by Defendants, the elements of such affirmative defenses are summarized herein below. The supporting evidence will be drawn from Defendants' witnesses to support Defendants' contentions of fact (see above). **All other "affirmative" defenses not specified herein below have been withdrawn by Defendants**. Nothing herein shall be construed as any withdrawal of Defendants' defenses which do not require affirmative proof by Defendants.

#### 1. **Failure to Mitigate Damages (4th Affirmative Defense)**

Plaintiffs and plaintiff's decedent have/had a duty to use reasonable efforts to mitigate damages. To prove a failure to avoid or reduce damages, Defendants must prove by a preponderance of the evidence: (1) that the plaintiff/decedent failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated with reasonable efforts.

#### 2. **Comparative Negligence (5th Affirmative Defense.)**

Plaintiff's decedent has/had a duty to use reasonable efforts to care for his own safety: a duty he breached by negligently charging at the officers, and then resisting arrest efforts by the officers. To prove decedent's comparative negligence, Defendants must prove by a preponderance of the evidence: (1) that decedent was negligent (ordinary negligence); and (2) that decedent's negligence was a substantial factor cause of his own harm. (The amount of any damages awarded to plaintiff would then be reduced by the court by the percentage of fault apportioned to plaintiff's decedent for his own injuries.)

#### 3. **Public Entity/Employee Immunity for Others' Torts (6th Affirmative Defense)**

If plaintiff's decedent sustained any injury or damages, such injury or damages were solely caused or contributed to by the wrongful conduct of decedent and not by

defendants. Therefore, Defendants are not responsible for plaintiff's decedent's self-inflicted death by drug overdose and unlawful resistance to arrest.

Plaintiff contends that there is no evidence to support these affirmative defenses and that such are inappropriate claims in this matter.

### 4. **Key Evidence to be Relied Upon by Defendants to Support their Affirmative Defenses.**

Defendants anticipate offering testimonial evidence from the defendant deputies, Defendants' experts, and possibly from plaintiff and/or plaintiff's witnesses, as well as related incident recordings and records, to support their comparative liability defense. Defendants anticipate offering testimonial evidence from expert witnesses, plaintiff and/or plaintiff's witnesses to support their mitigation defense.

### 5. **Other Operative Defenses.**

Defendants incorporate by reference here all such other defenses from their operative Answer [Dkt. Doc. 26] not specifically listed above as defenses, but Defendants concede that to the extent such are not *affirmative* defenses for which the burden of proof rests upon Defendants, such defenses need not be listed herein.

### 6. **Reservation of Defenses.**

Because the Complaint is couched in vague and conclusory terms, Defendants cannot fully anticipate all affirmative defenses that may be applicable to this action. Accordingly, Defendants hereby reserve the right to assert additional affirmative defenses, if and to the extent that such affirmative defenses are applicable, and/or to withdraw affirmative defenses as may be appropriate. The assertion of any of the foregoing is not intended and shall not be construed as any stipulation regarding any shifting of the burden of proof to any defendant regarding any of plaintiff's claims, or elements thereof.

## 4. **OPERATIVE PLEADINGS.**

The operative pleadings which raise the issues are: (1) plaintiff's First Amended Complaint for Damages [Doc. 34], and defendants' responsive pleadings thereto [e.g.,

Doc. 36].

## 5. JURY TRIAL.

All parties have demanded a jury trial of this action [Dkt. Doc. 1, 12, 34, and 36]. Accordingly, this matter will be tried by a jury.

## 6. ANTICIPATED EVIDENTIARY ISSUES.

The following law and motion matters and motions *in limine* ("MIL") are pending or contemplated.

## 7. ADMITTED AND STIPULATED FACTS.

### A. Admitted Facts.

The following facts are *admitted* by Defendants and require no proof:

1. Dep. Sonia Gomez was acting under color of law during any interaction such defendant had with plaintiff's decedent Kevin Niedzialek, and she was acting within the course and scope of her employment with the County of Riverside (Riverside County Sheriff's Department) during any interaction with the decedent.

2. Dep. Brian Keeney was acting under color of law during any interaction such defendant had with plaintiff's decedent Kevin Niedzialek, and he was acting within the course and scope of his employment with the County of Riverside (Riverside County Sheriff's Department) during any interaction with the decedent.

### B. Stipulated and Uncontroverted Facts.

The following facts, though *stipulated* or uncontroverted by the parties, shall be **without prejudice to any evidentiary objections**:

1. On July 29, 2019, law enforcement officers were employed by defendant County of Riverside through its Riverside Sheriff's Department.

2. The pre-force tactics, use of force, and other conduct of defendants Riverside County Sheriff's Department Deputies Sonia Gomez and Brian Keeney

during their encounter with Kevin Niedzialek that is at issue in this case were actions taken under color of state law.

      3.      The pre-force tactics, use of force, and other conduct of defendants Riverside County Sheriff's Department Deputies Sonia Gomez and Brian Keeney during their encounter with Kevin Niedzialek that is at issue in this case were within the course and scope of their employment with defendant County of Riverside and its Riverside County Sheriff's Department.

      4.      The July 29, 2019, incident encounter between defendants Riverside County Sheriff's Department Deputies Sonia Gomez and Brian Keeney and Kevin Niedzialek took place at the Sage Canyon Apartments located 42200 Moraga Road, in the City of Temecula.

Plaintiff contends that Deputies Sonia Gomez and Brian Keeney used excessive force and provided unreasonably delayed medical care to Kevin Niedzialek during the incident; and plaintiff is thus seeking monetary damages from Deputies Sonia Gomez and Brian Keeney and the County of Riverside.

Defendants contend that, under the totality of the circumstances, Deputies Sonia Gomez and Brian Keeney use of force on Kevin Niedzialek was objectively reasonable and therefore not excessive or unreasonable; and Deputies Sonia Gomez and Brian Keeney provided timely medical care for Kevin Niedzialek.

**8.    PENDING OR CONTEMPLATED LAW AND MOTION MATTERS.**

The following law and motion matters and motions *in limine* ("MIL") are pending or contemplated.

    **A.    Defendants' Motions.**

Defendants filed the following MILs as listed below:

1.    [MIL No. <u>1 – Daubert Motion Excluding Speculative/Unsupported Testimony-Opinions of P's Expert Jeffrey Noble.</u>]

      a.    <u>Scope</u>: An Order to exclude from trial any and all evidence, documents, records, recordings, testimony, statements, opinions,

argument, and/or reference before the jury, and from admission of evidence, of:

    i. Opinion Testimony (or reference thereto) of Plaintiff's expert Jeffrey Noble regarding defendant deputies' post-handcuffing use of force on a prone individual violated generally accepted police practices.

    ii. Opinion Testimony (or reference thereto) of Plaintiff's expert Jeffrey Noble regarding County of Riverside's policies, practices, and customs ignore generally accepted police practices as to positional asphyxia.

b. <u>Basis</u>:

    i. Relevance - Fed. R. Evid. 401-402;

    ii. Evidence Must be Relevant and Reliable; Speculative/Unsupported Testimony Inadmissible - Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); Opinion must be sufficiently tied to the facts of the case; and

    iii. Undue Prejudice, Undue Consumption of Time, and Confusion of the Issues - Fed. R. Evid. 403.

2. [MIL No. <u>2 – Daubert Motion Excluding Speculative/Unsupported Testimony-Opinions, and Irrelevant Expertise and Fame of P's Expert Dr. Daniel Wohlgelernter.</u>]

a. <u>Scope</u>: An Order to exclude from trial any and all evidence, documents, records, recordings, testimony, statements, opinions, argument, and/or reference before the jury, and from admission of evidence, of:

    i. All of Dr. Wohlgelernter's opinions regarding breathing studies, asphyxia, and the cause of Kevin Niedzialek's death.

b. <u>Basis</u>:

4813-6559-6148.1     14     Case No. 5:19-CV-02083-JGB(SHKx)
**DEFENDANTS' MEMORANDUM OF CONTENTIONS RE FACT AND LAW**

       i. Relevance - Fed. R. Evid. 401-402;

      ii. Evidence Must be Relevant and Reliable; Speculative/Unsupported Testimony Inadmissible - Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); Opinion must be sufficiently tied to the facts of the case; and

      iii. Undue Prejudice, Undue Consumption of Time, and Confusion of the Issues - Fed. R. Evid. 403.

3. [MIL No. 3 – Daubert Motion Excluding Speculative/Unsupported Testimony-Opinions of P's Expert Michael Freeman.]

   a. <u>Scope</u>: An Order to exclude from trial any and all evidence, documents, records, recordings, testimony, statements, opinions, argument, and/or reference before the jury, and from admission of evidence, of:

      i. All of Dr. Freeman's testimony and opinions regarding the cause of death of decedent and on asphyxia (in particular restraint/compressive asphyxia).

   b. <u>Basis</u>:

      i. Relevance - Fed. R. Evid. 401-402;

      ii. Fed. R. Evid. 702: Evidence Must be Relevant and Reliable; Speculative/Unsupported Testimony Inadmissible; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); Opinion must be adequately supported by evidence of expert's qualifications; and

      iii. Undue Prejudice, Undue Consumption of Time, and Confusion of the Issues - Fed. R. Evid. 403.

4. [MIL No. 4 – Evidence of So-Called Recovery Position Training By Other Departments.]

   a. <u>Scope</u>: An Order to exclude from trial any and all expert opinions,

argument, and/or reference before the jury, and from admission into evidence, of:

    i. All evidence of so-called recovery position training or related risks taught by agencies other than the Riverside County Sheriff's Department, and/or alleged positional asphyxia "risks" that were not provided in training or otherwise to the defendant deputies.

b.   Basis:

    i. Relevance - Fed. R. Evid. 401-402;

    ii. Undue Prejudice, Undue Consumption of Time, and Confusion of the Issues - Fed. R. Evid. 403; and

    iii. Pursuant to *Graham v. Connor,* 490 U.S. 386 (1989), the alleged "risks" of positional asphyxia and recovery position training was indisputably unknown to defendant deputies and thus cannot be considered in any analysis of the reasonableness of their restraint/force.

5.   [<u>MIL No. 5 – Non-Incident Facts About Unrelated Facts From Cases Involving George Floyd</u>.]

    a.   <u>Scope</u>: An Order to exclude from trial any and all evidence, documents, records, recordings, testimony, statements, opinions, argument, and/or reference before the jury, and from admission into evidence, of:

        i. Any mention of any facts related to the criminal case involving police use of force on George Floyd.

    c.   <u>Basis</u>:

        i. Relevance - Fed. R. Evid. 401-402; and

        ii. Undue Prejudice, Undue Consumption of Time, and Confusion of the Issues - Fed. R. Evid. 403.

B.   **Plaintiff's Motions.**

Plaintiff has filed the following MIL:

1.   Motion *in Limine* No. 1: Plaintiff will seek an order to exclude testimony by Defendants' Expert James Borden. [Dkt. Doc. 94.]  Defendants have timely filed their opposition.

2.   Motion *in Limine* No. 2: Plaintiff will seek an order to exclude testimony by Defendants' Expert Rod Englert and the "Incident Reconstruction Timeline". [Dkt. Doc. 94.]  Defendants have timely filed their opposition.

NOTE: Plaintiff has not advised defendants of any other MIL to be brought by plaintiff in this action.

C.   **Other Law and Motion Matters.**

It is anticipated that plaintiff will file briefs in opposition to the pleadings above that Defendants have filed.

**9.   BIFURCATION OF ISSUES FOR TRIAL.**

Defendants sought bifurcation of the issues of liability, causation, compensatory damages, and the factual foundation/predicate for an award of punitive damages (trial phase one) from the issue of calculation of punitive damages against any individual defendant (if any) (trial phase two).  Plaintiff has not stipulated to such bifurcation.

///
///
///
///
///
///
///
///
///

10. **USE OF ELECTRONICS AND EQUIPMENT IN COURTROOM.**

Pursuant to United States District Court, Central District of California Local Rule 83-6.1.5, defendants are requesting that the Court issue an order for authorization for use of certain equipment inside the Courtroom during the trial of the instant action, to the extent that such equipment is not already permitted by operation of any standing order, **including wireless communication devices such as smartphones, laptops, tablet computers, and associated electronic equipment and/or supporting carts** so as to facilitate efficient presentation and conduct of the trial.

DATED: August 2, 2021

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Garros Chan
Tony M. Sain, Esq.
Garros Chan, Esq.
Attorneys for Defendants,
COUNTY OF RIVERSIDE (erroneously named as separate parties as COUNTY OF RIVERSIDE and RIVERSIDE SHERIFF'S DEPARTMENT), SHERIFF-CORONER CHAD BIANCO, DEPUTY SONIA GOMEZ, and DEPUTY BRIAN KEENEY