**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

**THE LAW OFFICES OF JOHN BURTON**
John Burton (SBN 86029)
jb@johnburtonlaw.com
128 North Fair Oaks Avenue
Pasadena, California 91103
Tel: (626) 449-8300; Fax: (626) 449-8197

**HELM LAW OFFICE, PC**
T. Kennedy Helm, IV (SBN 282319)
kennedy@helmlawoffice.com
644 40th Street, Suite 305
Oakland, California 94609
Tel: (510) 350-7517; Fax: (510) 350-7359

Attorneys for Plaintiff Tracy Alves, Individually and as
Successor In Interest for Kevin R. Niedzialek, Deceased

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| TRACY ALVES, Individually and as Successor in Interest for KEVIN R. NIEDZIALEK, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>RIVERSIDE COUNTY, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF-CORONER CHAD BIANCO, DEPUTY SONIA GOMEZ, DEPUTY BRIAN KEENEY, and DOES 3–10,<br><br>Defendants. | Case No. 5:19-CV-02083-JGB (SHKx)<br><br>*[Hon. Jesus G. Bernal; Magistrate Judge Shashi H. Kewalramani]*<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>PTC:   August 23, 2021<br>Trial:   September 14, 2021 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      SUMMARY OF FACTUAL CONTENTIONS

### A. *The Deputies Respond to a Call for Service*

Mid-afternoon on July 29, 2019, Deputies Sonia Gomez and Brian Keeney were dispatched to an apartment complex in response to 911 calls reporting a psychiatric emergency. An injured man was pounding on doors and screaming for help. The deputies saw Kevin Niedzialek seated in an alcove with a bloody head wound. Niedzialek was agitated and incoherent. The deputies had been trained that head trauma can cause irrational behavior and that agitation can indicate drug use, mental illness, and excited delirium, which can be a life-threatening condition when not managed properly, and puts the person at higher risk of in-custody death when police restraint procedures interfere with breathing.

Keeney attempted to speak to Niedzialek, who responded nonverbally and incoherently. Niedzialek then stood up and advanced towards Keeney but stopped short of making physical contact. His hands remained at his sides. Gomez fired a Taser at Niedzialek, causing him to fall face first. Niedzialek sat up, continuing to display agitated, irrational behavior. Gomez ordered Niedzialek to put his hands behind his back and lie down. Niedzialek complied, but lied down on his back rather than his chest. When Gomez instructed Niedzialek to roll over, he instead stood up and took  a few quick steps towards Keeney with his hands at his side. Gomez activated her Taser, causing Niedzialek to fall face forward and land hard on the ground, knocking the wind out of him.

Keeney grabbed Niedzialek's left wrist and placed his knee on Niedzialek's midback while extending his leg towards Niedzialek's buttocks. Gomez quickly handcuffed Niedzialek with Keeney's assistance. Throughout the handcuffing, Niedzialek flailed his legs but did not kick either deputy.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**B. The Deputies Use Excessive and Unreasonable Force Against a Compliant Niedzialek**

After handcuffing, the deputies continued to push down on Niedzialek's back, holding him prone against the ground instead of following standard law-enforcement practice by rolling him onto his side to breathe. According to Gomez, the only crimes Niedzialek might have committed were disturbing the peace and resisting (arrest). Niedzialek attempted to roll onto his left side to alleviate the pressure on his chest so that he could breathe. The deputies rolled him back onto his chest. Niedzialek exclaimed, "Stop," "I need help" twice, and subsequently said, "Get off" or "Get these off." Despite Niedzialek's pleas for help, the deputies continued to push down on Niedzialek's back.

Forty-five seconds after handcuffing, Niedzialek stopped making sounds and became still. Despite this, the deputies continued to push down on Niedzialek's back, holding him prone for another four minutes. Gomez used her right hand to continuously apply pressure to Niedzialek's mid-back and restricted his torso from moving. About 1 minute and 45 seconds after handcuffing, Keeney whispered, "He's falling asleep." Even though Niedzialek was unresponsive, the deputies continued to hold him prone against the ground.

Two minutes and 23 seconds after the handcuffing, Deputy Bowman arrived to help and was directed by Gomez to clear the incident apartment. Approximately eight seconds later, Keeney finally removed his knee of Niedzialek's back. Three minutes and 9 seconds after the handcuffing, Gomez attempted to elicit a response from Niedzialek by asking for his name but Niedzialek did not respond.

Four minutes and 40 seconds after handcuffing, Keeney attempted to ascertain whether Niedzialek was breathing. When he saw no signs of life,  he tapped Niedzialek a few times while telling Gomez to turn Niedzialek over.

When Niedzialek was turned onto his back, video shows his pupils to be fixed and dilated. He was not breathing, and he was not responsive. Gomez checked for a

1   pulse. After announcing that she did not detect one, a few seconds later she claimed to

2   feel a "very low" pulse. Niedzialek obviously had no pulse when he was rolled over.

3        One minute and 40 seconds later, paramedic Lisa La Russo and EMT Jesus

4   Raygoza arrived. La Russo observed that Niedzialek had agonal respiration and no

5   pulse. She requested Keeney's assistance in performing CPR. She also applied a heart

6   monitor to Niedzialek, which showed that Niedzialek had pulseless electrical activity

7   ("PEA"). PEA is consistent with asphyxia. The only plausible cause for PEA in this

8   case is low oxygen levels, secondary to restraint/compression asphyxia. Despite

9   toxicology reports showing that Niedzialek had methamphetamine in his system at the

10  time of the incident, methamphetamine was not a plausible cause for Niedzialek's

11  cardiac arrest because even at lethal levels, methamphetamine toxicity does not cause

12  PEA but rather ventricular fibrillation (VF) or ventricular tachycardia (VT). Moreover,

13  there is no evidence to support that the relatively low level of methamphetamine in

14  Niedzialek's blood, significantly less than what is commonly found in recreational

15  users, could be a plausible cause of Niedzialek's death.

16       Niedzialek was in a state of high oxygen demand due to the drug use, injuries to

17  his face and head, Taser applications, and confrontation with the deputies. His oxygen

18  supply was compromised due to his being on his chest, with both deputies applying

19  compressive force to his back. Compression of the neck, chest, and abdomen during

20  physical restraint is a well-recognized mechanism for causing asphyxiation.

21  Compression asphyxia does not require the application of too much weight to occur, it

22  can result from the subject's inability to breathe due to something preventing the

23  subject from moving their diaphragm and breathing normally. Thus, the combination

24  of the restraint asphyxia and Niedzialek's heightened oxygen requirement caused

25  hypoxia and the subsequent PEA cardiac arrest.

26       Niedzialek being held prone, chest down, without being placed into a recovery

27  position caused his cardiac arrest. It is highly likely cardiac arrest occurred when

28  Niedzialek stopped moving less than a minute after handcuffing, and around the time

1  that Keeney said "I think he's falling asleep." Subsequent breaths were agonal.

2  Niedzialek's death was a result of the aggressive restraint tactics by the deputies

3  resulting in asphyxia, with a contributing factor being the lack of timely resuscitation.

4  Had the deputies placed Niedzialek into a recovery position after handcuffing, the

5  cardiac arrest would not have occurred and subsequently neither would the anoxic

6  brain injury. Had the deputies commenced CPR much earlier, Niedzialek's anoxic brain

7  injury would have been minimized and he would have more likely than not survived the

8  encounter with the deputies.

9   **C. The County's Custom, Practices, Policies and Training, and Sheriff
      Bianco's Reckless Indifference Were Moving Forces Behind This
10     Avoidable Death.**

11  As evidence at the trial of Derek Chauvin demonstrated, holding persons prone

12  impairs their ability to breathe and can cause them to asphyxiate. Officers in California

13  are trained, according to California Peace Officers Standards and Training (POST), that

14  body positioning can lead to inadequate breathing and potential asphyxia. POST

15  instructs officers that if a person has a pulse, is breathing, but is unconscious, the

16  person should be placed into a recovery position (on their side) to aid in breathing.

17  Contrary to generally accepted police practices and POST training, Riverside

18  County Sheriff's Department claims that it instructs deputies that being held in the

19  prone position does not interfere with breathing and that the safest way to restrain a

20  handcuffed person is prone. The deputies are further trained to maintain pressure on a

21  handcuffed, safely restrained and prone subject's back to make sure the subject does

22  not "pop up." Sheriff Bianco, despite being aware of RCSD's contrarian training and

23  practices through his membership in the International Association of Chiefs of Police

24  and his use of Lexipol in consolidating the department's manual, was recklessly

25  indifferent to RCSD's unconstitutional practice and inadequate training on the subject.

26  **II.    PLAINTIFF'S CLAIMS**

    **A. Claim 1: Fourth Amendment—Excessive Force**
27  Plaintiff brings this claim against Defendant Deputies Brian Keeney and Sonia

28

Gomez. Plaintiff contends that Defendant Deputies used excessive force against decedent Kevin Niedzialek in violation of his Fourth Amendment rights and 42 U.S.C. § 1983. A constitutional claim for excessive force is evaluated through the Fourth Amendment's reasonableness standard, considering "whether the officers' actions [we]re 'objectionably reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "nature and quality of the intrusion" is weighed against the "countervailing governmental interests at stake." *Id.* at 396. Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Even where some force is justified, the amount actually used may be excessive.  *Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002). Plaintiff seeks survival damages, punitive damages, and attorneys' fees under this claim.

      Elements:

      1.      Deputy Keeney and Deputy Gomez acted under color of law;

      2.      Deputy Keeney and/or Deputy Gomez used excessive force against Kevin Niedzialek;

      3.      The excessive force caused injury, damage, loss, or harm to Kevin Niedzialek.

*See* Ninth Circuit Manual of Model Jury Civil Instructions, No. 9.25.

**B. Claim 2: Fourth and Fourteenth Amendments—Denial of Medical Care**

      Plaintiff brings this claim against Defendants Deputy Keeney and Deputy Gomez. Plaintiff contends that Deputy Keeney and Deputy Gomez denied decedent Kevin Niedzialek reasonable post-handcuffing medical care even though they knew or had notice of Mr. Niedzialek's serious need for medical care. Plaintiff contends that among other things the deputies failed to clear his airway so that Niedzialek could breathe freely, and failed to timely commence CPR after asphyxiating him.  "The Fourth Amendment requires law enforcement officers to provide objectively

reasonable post-arrest care to an apprehended suspect." *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006). This is an objective test, based on the totality of the circumstances. Relevant factors when evaluating the reasonableness of post-care arrest include the promptness of the care, the seriousness of the medical need, and whether the officers had knowledge or notice of the medical need. *Purnell v. City of Sunnyvale Police Dep't*, 5:18-cv-02113-EJD, 2019 WL 587287, at *2 (N.D. Cal. Feb. 13, 2019). Plaintiff seeks survival damages, punitive damages, and attorneys' fees under this claim. Plaintiff also brings this claim under the Fourteenth Amendment.

Elements:

1.    Deputy Keeney and/or Deputy Gomez made an intentional decision regarding the denial of needed medical care;

2.    The denial of medical care put Kevin Niedzialek at a substantial risk of suffering serious harm;

3.    Deputy Keeney and/or Deputy Gomez did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of deputie(s)' conduct obvious; and

4.    By not taking such measures, Deputy Keeney and/or Deputy Gomez caused Kevin Niedzialek's injuries.

*See* Ninth Circuit Manual of Model Jury Civil Instructions No. 9.30 PARTICULAR RIGHTS—FOURTEENTH AMENDMENT—PRETRIAL DETAINEE'S CLAIM RE CONDITIONS OF CONFINEMENT/MEDICAL CARE.

## C. Claim 3: Fourteenth Amendment—State Created Danger

Plaintiff brings this claim against Defendants Deputy Keeney and Deputy Gomez. Plaintiff contends Deputy Keeney and Deputy Gomez affirmatively placed Mr. Niedzialek in a position of danger and exposed Mr. Niedzialek to a foreseeable danger he would not have otherwise faced by handcuffing him behind his back and

1   then holding him prone so that he could not breathe freely. Government employees are

2   liable for harm inflicted by third parties when the employees "affirmatively place[] the

3   plaintiff in a position of danger, that is, where [their] action[s] create[] or expose[] an

4   individual to danger which he or she would not have otherwise faced." *Kennedy v. City of*

5   *Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (internal quotation marks omitted). The

6   affirmative act must create an actual, particularized danger, and the ultimate injury must

7   be foreseeable. *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (internal

8   citations omitted). "The employees must have acted with 'deliberate indifference' to a

9   'known or obvious danger.'" *Id.* (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th

10  Cir. 2011)).

11          "In examining whether an officer affirmatively places an individual in danger,

12  [the Court] does not look solely to the agency of the individual . . . [or] what options

13  may or may not have been available to" him. *Hernandez*, 897 F.3d at 1133 (quoting

14  *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1986 (9th Cir. 2000)). "Instead, [the

15  Court] examine[s] whether the officers left the person in a situation that was more

16  dangerous than the one in which they found him." *Id.* "[T]he critical distinction for

17  finding liability is not between danger creation and enhancement, but . . . between state

18  action and inaction in placing an individual at risk." *Id.* at 1135 (quoting *Penilla v. City of*

19  *Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997).

20          Plaintiff seeks survival damages, punitive damages, and attorneys' fees under this

21  claim.

22          Elements:

23          1.      Deputy Keeney and/or Deputy Gomez committed an affirmative act;

24          2.      The affirmative act placed Kevin Niedzialek in a position of actual,

25                  particularized danger by creating or exposing Kevin Niedzialek to a

26                  danger that he would not have otherwise faced;

27          3.      Deputy Keeney and/or Deputy Gomez acted with deliberate indifference

28                  to a known or obvious danger; and

4.      The affirmative act that created the actual, particularized danger caused injury to Kevin Niedzialek that was foreseeable.

*See* Ninth Circuit Manual of Model Jury Civil Instructions No. 9.33B PARTICULAR RIGHTS—FOURTEENTH AMENDMENT—DUE PROCESS—STATE-CREATED DANGER.

**D. Claim 4: Municipal Liability Based on Policy, Custom, or Practice**

Plaintiff brings this claim against defendants County of Riverside and Riverside Sheriff's Department. Plaintiff contends these defendants had a policy, custom, or practice of holding or leaving handcuffed people on their chest, a widely recognized cause of asphyxiation.

"Under *Monell*, a local government body can be held liable . . . for policies of inaction as well as policies of action." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2004). "[A] policy of inaction is based on a government body's failure to implement procedural safeguards to prevent constitutional violations." *Id.* (citations and quotation marks omitted). This requires a showing that the (1) "policy amounts to deliberate indifference to the plaintiff's constitutional right" and (2) defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143-45 (9th Cir. 2012) (citations omitted). "When a county continues to turn a blind eye to severe violations of . . . constitutional rights — despite having received notice of such violations — a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997).

Plaintiff seeks compensatory damages and attorney fees under this claim.

Elements:

1.      Deputy Keeney and/or Deputy Gomez acted under color of state law;

2.      The acts of Deputy Keeney and/or Deputy Gomez deprived Kevin Niedzialek of his particular rights under the United States Constitution;

3.      Deputy Keeney and/or Deputy Gomez acted pursuant to an expressly adopted official policy or widespread or longstanding practice of custom

of defendants County of Riverside and Riverside County Sheriff's Department; and

4. The County of Riverside's and Riverside County Sheriff Department's official policy or widespread or longstanding practice or custom caused the deprivation of Kevin Niedzialek's rights; that is, that these defendants' official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the Kevin Niedzialek's rights as to be the moving force that caused the ultimate injury.

*See* Ninth Circuit Manual of Model Jury Civil Instructions No. 9.5. SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON OFFICIAL POLICY, PRACTICE, OR CUSTOM THAT VIOLATES LAW OR DIRECTS EMPLOYEE TO VIOLATE LAW—ELEMENTS AND BURDEN OF PROOF.

**E. Claim 5: Municipal Liability Based on Inadequate Training**

Plaintiff brings this claim against defendants County of Riverside and the Riverside County Sheriff's Department. "A plaintiff . . . might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations 'where a violation of rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. Cty of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)); *see City of Canton v. Harris*, 498 U.S. 378, 390 n.10 (1989) (providing an example of an "obvious" case where a single constitutional violation, accompanied by a correlating failure to train is sufficient to be actionable under section 1983).

Elements:

1. The acts or failure to act of Deputy Keeney and/or Deputy Gomez deprived Kevin Niedzialek of his particular rights under the United States Constitution

5:19-CV-02083-JGB (SHKx)

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

2.      Deputy Keeney and/or Deputy Gomez acted under color of state law;

3.      The training policies of defendants County of Riverside and Riverside County Sheriff's Department were not adequate to train its police officers to handle the usual and recurring situations with which they must deal;

4.      The County of Riverside and the Sheriff's Department were deliberately indifferent to the known or obvious consequences of their failure to train deputies adequately; and

5.      The failure of the County of Riverside and the Sheriff's Department to provide adequate training caused the deprivation of Kevin Niedzialek's rights; that is, the defendants' failure to train played a substantial part in bringing about or actually causing the injury or damage to Kevin Niedzialek.

*See* Ninth Circuit Manual of Model Jury Civil Instructions No. 9.8. SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON FAILURE TO PREVENT VIOLATIONS OF LAW OR A FAILURE TO TRAIN—ELEMENTS AND BURDEN OF PROOF.

### F. Claim 6: Municipal Liability Based on Ratification

Plaintiff brings this claim against defendants County of Riverside and Riverside County Sheriff's Department. Liability under a section 1983 *Monell* claim may attach when a final policymaker ratifies a subordinate's unconstitutional action and the basis for it. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *see generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To show ratification, a plaintiff must prove that "authorized policymakers approve a subordinate's decision and the basis for it." *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality)); s*ee also Lytle v. Carl*, 382 F.3d 978, 987-88 (9th Cir. 2004) ("[R]atification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act."); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002). Plaintiff seeks compensatory damages

and attorney fees under this claim.

Elements:

1. Deputies Keeney and Gomez acted under color of state law;

2. the acts and failures to act of Deputies Keeney and Gomez deprived Kevin Niedzialek of his particular rights under the United States Constitution as explained in later instructions;

3. Sheriff-Coroner Chad Bianco acted under color of state law;

4. Sheriff-Coroner Chad Bianco had final policymaking authority from defendant County of Riverside concerning the acts and failures to act of Deputies Keeney and Gomez; and

5. Sheriff-Coroner Chad Bianco ratified the acts and failures to act of Deputies Keeney and Gomez; that is, Sheriff-Coroner Bianco knew of and specifically made a deliberate choice to approve the acts and failures to act and the bases for these. *See* Ninth Circuit Manual of Model Jury Civil Instructions No. 9.7 SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON RATIFICATION—ELEMENTS AND BURDEN OF PROOF.

### G. Claim 7: Supervisory Liability

Plaintiff brings this claim against defendant Sheriff Chad Bianco. "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made; or for conduct showing a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations omitted). Plaintiff seeks compensatory damages, punitive damages, and attorney fees under this claim.

Elements:

1.    Sheriff Bianco acted under color of state law;

2.   The acts and failures to act of Sheriff Bianco's subordinates deprived Kevin Niedzialek of his particular rights under the United States Constitution;

3.   Sheriff Bianco disregarded the known or obvious consequence that a particular training deficiency or omission would cause his subordinates to violate the Kevin Niedzialek's constitutional rights;

4.   The deficiency or omission actually caused his subordinates to deprive Kevin Niedzialek of his constitutional rights; and

5.   Sheriff Bianco's conduct was so closely related to the deprivation of Kevin Niedzialek's rights as to be the moving force that caused the ultimate injury.

*See* Ninth Circuit Manual of Model Jury Civil Instructions No. 9.4, SECTION 1983 CLAIM AGAINST SUPERVISORY DEFENDANT IN INDIVIDUAL CAPACITY—ELEMENTS AND BURDEN OF PROOF.

**H. Claim 8: Violation of California Civil Code section 52.1 (Bane Act)**

Plaintiff brings this claim against all defendants. A claim under the Bane Act requires a plaintiff to show that the defendant acted with a specific intent to violate the plaintiff or decedent's civil rights. *B.B. v. Cty. of Los Angeles*, 25 Cal. App. 5th 115, 133 (2018) (citing *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) ("'[A] reckless disregard for a person's constitutional rights is evidence of specific intent to deprive that person of those rights.'" *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993). Plaintiff seeks survival damages, punitive damages, and attorney fees under this claim.

Elements:

1.   Deputy Keeney and/or Deputy Gomez interfered, by threats, intimidation, or coercion, with Kevin Niedzialek's right to be free from unreasonable force;

2.   Deputy Keeney and/or Deputy Gomez injured Kevin Niedzialek in

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

violation of his right to be free from unreasonable force;

3.    Kevin Niedzialek was harmed; and

4.    Deputy Keeney and/or Deputy Gomez's conduct was a substantial factor in causing Kevin Niedzialek's harm.

Source: BAJI 7.90.

### I.  Claim 9: State Law Battery

Plaintiff brings this claim against defendants Deputy Keeney and Deputy Gomez. The County of Riverside is vicariously liable for the deputies' conduct. Cal. Gov't. Code § 815.2. Under California law, a battery claim arising out of excessive force by a peace officer is evaluated by way of traditional Fourth Amendment analysis under *Graham. See Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004). Plaintiff seeks compensatory and punitive damages under this claim.

Elements:

1.    Deputy Keeney and/or Deputy Gomez intentionally touched the decedent or caused Kevin Niedzialek to be touched;

2.    Deputy Keeney and/or Deputy Gomez used unreasonable force or restraint against Kevin Niedzialek;

3.    Kevin Niedzialek did not consent to the use of that force or restraint;

4.    Kevin Niedzialek was harmed; and

5.    Deputy Keeney and/or Deputy Gomez's use of unreasonable force or restraint was a substantial factor in causing Kevin Niedzialek's harm.

Source: CACI 1305.

### J.  Claim 10: State Law Negligence

Plaintiff brings this claim against defendants Deputy Keeney and Deputy Gomez. The County of Riverside is vicariously liable for the deputies' conduct. "California negligence law regarding the use of . . . force overall is broader than federal Fourth Amendment law." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (citing *Villegas ex rel. C.V. v. City of Anaheim*, 828 F.3d 1252, 1257 n.6 (9th

1  Cir. 2016). While California law generally considers federal Fourth Amendment factors

2  when assessing an officer's tactical conduct at the time of the use of force, California

3  negligence also encompasses pre-force tactics and decisions. *Id.* at 1125, 1126. "Under

4  California law, the officer's pre-[force] decisions can render his behavior unreasonable

5  under the totality of the circumstances, even if his use of [] force at the moment . . .

6  might be reasonable in isolation." *Id.* at 1125. Plaintiff seeks compensatory damages

7  under this claim.

8      Elements:

9      1.    Deputy Keeney and/or Deputy Gomez owed Kevin Niedzialek a duty of

10           care;

11     2.    Deputy Keeney and/or Deputy Gomez breached that duty by failing to

12           exercise ordinary care of a law enforcement officer under the

13           circumstance;

14     3.    Kevin Niedzialek was harmed; and

15     4.    Deputy Keeney and/or Deputy Gomez negligence was a substantial

16           factor in causing Kevin Niedzialek's harm.

17     Source: CACI 400.

18  **K.  Plaintiff's Key Evidence**

19  1.  Video from body-worn camera of Deputy Sonia Gomez;

20  2.  Composite video from percipient witness's cell phone and Deputy Gomez's

21      body-worn camera;

22  3.  Testimonies from percipient witnesses;

23  4.  Opinions of plaintiff's expert witnesses;

24  5.  Photographs of the incident scene;

25  6.  Photographs of decedent;

26  7.  Forensic evidence, including AMR patient care report;

27  8.  Testimony of defendants;

28  9.  Law-enforcement training materials and issued guidelines, including California

1        Peace Officer Standards and Training (POST);

2    10. Testimony from plaintiff's damages witnesses.

3  **III.   ANTICIPATED EVIDENTIARY ISSUES**

4        Plaintiffs have filed the following motions *in limine*:

5    1.    Plaintiff's Motion *in Limine* No. 1 to Exclude Testimony by Defendants'

6          Expert James Borden; and

7    2.    Plaintiff's Motion *in Limine* No. 2 to Exclude Defendants' Expert Rod

8          Englert and the "Incident Reconstruction Timeline."

9  **IV.   ANTICIPATED ISSUES OF LAW**

10       Plaintiff currently does not anticipate any issues of law.

11  **V.    BIFURCATION**

       Plaintiff opposes bifurcation.

12  **VI.   JURY TRIAL**

13       The issues herein are triable to a jury as a matter of right.  The parties made

14  timely demands for trial by jury.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:19-CV-02083-JGB (SHKx)

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## VII.   ATTORNEYS' FEES

If Plaintiff prevails at trial, she is entitled to attorneys' fees under 42 U.S.C. § 1988, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), and under state law pursuant to California Civil Code §§ 52.1, and 1021, *et seq.*

## VIII.   ABANDONMENT OF ISSUES

Plaintiff has not abandoned any issues.


DATED:  August 2, 2021                    **LAW OFFICES OF DALE K. GALIPO**
                                          **THE LAW OFFICES OF JOHN BURTON**
                                          **HELM LAW OFFICE, PC**



                                                    */s/ John Burton*
                                          Dale K. Galipo
                                          John Burton
                                          T. Kennedy Helm, IV
                                          Hang D. Le
                                          Attorneys for Plaintiff TRACY ALVES