Eugene P. Ramirez, Esq. (State Bar No. 134865)
 *epr@manningllp.com*
Tony M. Sain, Esq. (State Bar No. 251626)
 *tms@manningllp.com*
Garros Chan, Esq. (State Bar No. 320561)
 *gxc@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants,
COUNTY OF RIVERSIDE (erroneously named
as separate parties as COUNTY OF RIVERSIDE
and RIVERSIDE SHERIFF'S DEPARTMENT)
and SHERIFF-CORONER CHAD BIANCO,
DEPUTY GOMEZ and DEPUTY KEENEY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ALVES, Individually and as Successor in Interest for KEVIN R. NIEDZIALEK, deceased,<br><br>Plaintiff,<br><br>v.<br><br>RIVERSIDE COUNTY, RIVERSIDE SHERIFF'S DEPARTMENT, SHERIFF-CORONER CHAD BIANCO and DOES 1-10,<br><br>Defendants. | Case No. 5:19-CV-02083-JGB(SHKx)<br>*[Hon. Jesus G. Bernal; Magistrate Judge Shashi H. Kewalramani]*<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS FOR TRIFURCATION OF TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      September 27, 2021<br>Time:      9:00 a.m.<br>Crtrm.:   1 [Riverside] |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on September 27, 2021, at 9:00 a.m., or as

soon thereafter as counsel may be heard, in Courtroom 1 of the above-captioned court,

located at 3470 Twelfth Street, Riverside, CA 92501, Defendants COUNTY OF

RIVERSIDE (erroneously named as separate parties as COUNTY OF RIVERSIDE

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

and RIVERSIDE SHERIFF'S DEPARTMENT), SHERIFF-CORONER CHAD BIANCO, DEPUTY GOMEZ and DEPUTY KEENEY ("Defendants") will and hereby do respectfully move this Court for an order trifurcating trial in this matter into the following phases: (1) liability of Defendants DEPUTY GOMEZ and DEPUTY KEENEY for the underlying incident, including compensatory damages and punitive damages predicate; (2) Defendants COUNTY OF RIVERSIDE and SHERIFF-CORONER CHAD BIANCO's pendant liability under Monell and/or pendant supervisory liability; and (3) punitive damages calculation.

This motion is made pursuant to Fed. R. Civ. Proc. 7 and 42 and United States District Court, Central District Local Rule 7-4, on the basis that that Court is empowered to try issues separately and should do so for purposes of judicial economy and to prevent undue prejudice to Defendants, among other reasons.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

## NOTICE OF CONFERENCE OF COUNSEL

Pursuant to Local Rule 7-3, conference of counsel occurred prior to this motion. Specifically, during the Local Rule 16-2 pre-trial conference of counsel on July 10, 2021, the parties discussed the issue of bifurcation and/or trifurcation. Plaintiff's counsel stated that Plaintiff would oppose such a request, as indicated by the (Proposed) Final Pretrial Conference Order. [Dkt. 117.] Then, due to the approaching trial dates in this matter (now vacated), defense counsel notified Plaintiff's counsel on August 20, 2021 that they would be seeking ex parte relief to trifurcate trial in this matter. At the August 23, 2021, pre-trial conference hearing in this matter, counsel

///

///

4822-7828-8632.1

1  also discussed Defendants' request for trifurcation and Plaintiff's counsel indicated

2  they would oppose the instant motion.

3

4  DATED:  August 27, 2021          **MANNING & KASS**

5                                   **ELLROD, RAMIREZ, TRESTER LLP**

6

7                                   By:    _/s/Tony M. Sain_

8                                          Tony M. Sain, Esq.

9                                          Garros Chan, Esq.

10                                         Attorneys for Defendants COUNTY OF

11                                         RIVERSIDE, (erroneously named as

                                           separate parties as COUNTY OF

12                                         RIVERSIDE and, RIVERSIDE

                                           SHERIFF'S DEPARTMENT), SHERIFF-

13                                         CORONER CHAD BIANCO, DEPUTY

                                           GOMEZ and DEPUTY KEENEY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

4822-7828-8632.1

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

1. INTRODUCTION AND SUMMARY OF ARGUMENT. ............................... 1

2. THE COURT SHOULD TRY THE ISSUES OF WHETHER A CONSTITUTIONAL VIOLATION BY A DEFENDANT DEPUTY OCCURRED BEFORE TRIAL OF WHETHER THE COUNTY OR SHERIFF MAY BE HELD LIABLE UNDER *MONELL* TYPE CLAIMS. ...................................................................................................... 2

   A. This Court Is Empowered to Try Issues Separately and to Exclude Evidence at issue in a Later Phase of Trial from an Earlier Phase ...................................................................................... 2

   B. This Court Should Try Plaintiff's *Monell* and Supervisory Liability Claims Separately And Later Because Plaintiff Cannot Establish Such Liability Unless They Have First Proved an Underlying Constitutional Violation by an Individual Defendant Deputy ........................................................................................... 3

      1. *Monell* Municipal Liability Claims Are Pendant Upon Proof Of Individual Officer-Defendants' Constitutional Violation. ...................................................................................... 3

      2. Supervisory Liability Claims Against Individuals Are Also Pendant *Monell*-Style Claims. .......................................... 7

   C. The Court Should Try Plaintiff's *Monell* and Supervisory Liability Claims Separately Because Evidence Related to Proof of Such Liability is Unduly Prejudicial to Defendant Deputies. ............ 8

      1. Under *Graham*, The Reasonableness Of The Defendant Officers' Use Of Force Cannot Be Adjudged Using Facts Unknown To Them At The Time. ................................................ 9

      2. Officers Are Required To Know Legal Mandates, Not What Non-Party Agencies May Teach. .................................... 12

   D. The Court Should Try Plaintiff's *Monell* Claims Separately Because Evidence Related To Proof of *Monell* Liability Is Also Cumbersome and Time Consuming ..................................................... 16

   E. Where Plaintiff Claims That Failure to Allow Evidence of Non-Party Practices Against the Defendant Deputies Allows Them to Escape Being Judged By the Controlling Legal Standard, Plaintiff Misstates the Law ...................................................................... 18

3. THE COURT SHOULD ALSO SEPARATELY TRY PUNITIVE DAMAGE CALCULATION ISSUES ......................................................... 19

4. CONCLUSION. ......................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.B. v. Cty. of San Diego*, 2020 U.S. Dist. 182507 (S.D. Cal. Oct. 1, 2020) ............ 13

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................ 14

*Arnold v. City of Scappoose,* 2001 U.S. Dist. LEXIS 13359 (D.Or. Aug. 20, 2001) ........................................................................................................ 17

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..................................................... 14

*Avalos v. Baca,* 596 F.3d 583 (9th Cir. 2010) ............................................. 17

*Baldridge v. City of Santa Rosa*, 1999 U.S. Dist. LEXIS 1414 (N.D. Cal. Feb. 9, 1999) .................................................................................................. 11

*Barnes v. City of Pasadena*, 508 Fed. Appx. 663 (9th Cir. 2013) ............................ 12

*Bates v. United Parcel Serv.,* 204 F.R.D. 440 (N.D. Cal. 2001) .............................. 20

*Board of the County Comm'r v. Brown,* 520 U.S. 397 (1997) ................................... 3

*Boyd v. City & Cty. of San Francisco,* 2006 U.S. Dist. LEXIS 14047 (N.D. Cal. Mar. 14, 2006) ............................................................... 6, 9, 15, 16

*Brown v. Ransweiler,* 171 Cal.App.4th 516 (2009) ................................................ 10

*Brown v. Trejo*, 818 Fed. Appx. 559 (9th Cir. 2020) ................................................ 10

*Canton,* 489 U.S. ........................................................................................ 5

*Case v. Kitsap Cnty. Sheriff's Dep't,* 249 F.3d 921 (9th Cir. 2001) ........................ 12

*City of Canton v. Harris,* 489 U.S. 378 (1989) ................................................ 3, 5, 17

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986) ................................................ 4, 5

*Collens v. City of New York,* 222 F.R.D. 249 (S.D.N.Y. 2004) ................................. 19

*Collins v. City of Harker Heights,* 503 U.S. 115 (1992) ........................................... 4

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ................................................ 7

*Davis v. Ellensburg,* 869 F.2d 1230, 1233-1234 (9th Cir. 1989) .............................. 17

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) ................................. 13

*Estate of Lopez v. Suhr*, 2016 U.S. Dist. LEXIS 55694 (N.D. Cal. Apr. 26, 2016) ........................................................................................................ 2

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

*Fairley v. Luman,* 281 F.3d 913 (9th Cir. 2002) ....................................................6

*Figueroa v. Gates*, 207 F.Supp.2d 1085 (C.D. Cal. June 11, 2002) ...................2, 17

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) ..................................11

*Glenn v. Washington Cty.*, 673 F.3d 864  (9th Cir. 2011)........................................11

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................10

*Green v. Cty. of Los Angeles*, 2014 U.S. Dist. LEXIS 5895 (C.D. Cal. Jan. 16, 2014)........................................................................................................................9

*Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994)..................................19

*Halbert v. Cty. of San Diego*, 2010 U.S. Dist. LEXIS 30563 (S.D. Cal., Mar. 30, 2020)..............................................................................................................10, 11

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ..............................................................4

*Hayes v. County of San Diego*, 57 Cal.4th 622 (2013)........................................11, 12

*Heien v. North Carolina*, 135 S.Ct. 530, 539-540 (2014) ........................................13

*Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009) ......................................10, 12

*Hirst v. Gertzen*, 676 F.2d 1252 (9th Cir. 1982) ........................................................2

*Hopkins v. Andaya,* 958 F.2d 881 (9th Cir. 1992)....................................................6

*Hwang v. City & Cty. of San Francisco*, 2008 U.S. Dist. LEXIS 83022 (N.D. Cal. Sept. 30, 2008) .....................................................................................................9

*In re USA Comm. Mort. Co.*, 2010 U.S. Dist. LEXIS 127433 (D. Nev. 2010) .........3

*Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993 (9th Cir 2001) ...........2

*Jones v. City of Chicago,* 1999 U.S. Dist. LEXIS 3358 (N.D. Ill. 1999).................15

*Knox v. City of Fresno*, 2016 U.S. Dist. LEXIS 72808 (E.D. Cal. June 1, 2016)................................................................................................................9, 12

*Koussaya v. City of Stockton*, 54 Cal.App.5th 909 (2020)......................................12

*Larez v. Los Angeles,* 946 F.2d 630, 635 (9th Cir. 1991).......................................16

*M.R. v. City of Azusa*, 2014 U.S. Dist. LEXIS 204804 (C.D. Cal., Oct. 1, 2014)......................................................................................................................11

*Martinez v. County of L.A.*, 47 Cal.App.4th 334 (1996) .........................................12

*Motley v. City of Fresno*, 2020 U.S. Dist. LEXIS 118160 (E.D. Cal. July 5, 2020)........................................................................................................................8

*Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) ...................................................4, 17

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

*Ortega v. Ritchie*, 708 Fed. Appx. 446 (9th Cir. 2018) ................................................7

*Palmerin v. Riverside,* 794 F.2d 1409 (9th Cir. 1986) ...............................................4

*Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996) ...................................2, 8

*Rippey v. Dopp*, 19 Fed.Appx. 702 (9th Cir. 2001) ....................................................12

*Ryburn v. Huff*, 565 U.S. 469 (2012) ..........................................................................11

*Sanchez v. Riverside*, 596 F.Supp. 193 (C.D. Cal. 1984) .......................................4, 17

*Scott v. Henrich,* 39 F.3d 912 (9th Cir. 1994) .............................................................4

*Scott v. Henrich*, 700 F.Supp. 498 (D. Mont. 1988) ..................................................11

*Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 2008) .........................................................12

*Spears v. Anderson,* 2009 U.S. Dist. LEXIS 36792 (D. Nev. 2009) ..........................20

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...............................................................7

*Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090 (9th Cir. 2006) ....................13

*Vosbinder v. Ambach,* 926 F.2d 1333 (2d Cir. 1991) .................................................20

*Watson*, 765 Fed. Appx. 248 (9th Cir. 2019) .............................................................11

*Way v. County of Ventura*, 445 F.3d 1157 (9th Cir. 2006) .......................................19

*Whiting v. Dep't of the Cal. Highway Patrol*, 2020 U.S. Dist. LEXIS 178167 (C.D. Cal. Sept. 1, 2020) ................................................................................................7

## **RULES**

Fed. R. Evid. 403 ..........................................................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION AND SUMMARY OF ARGUMENT.

Defendants hereby respectfully request that this honorable Court trifurcate trial into the following phases: (1) a first phase of trial addressing the liability of the Deputy Defendants Keeney and Gomez for the underlying incident, as well as compensatory damages pertaining thereto against the individual officers, and the punitive damages predicate (individual deputy constitutional liability phase); (2) a second phase of trial addressing the issues of whether Plaintiff is entitled to a specific amount of punitive damages against the Deputy Defendants (punitive damages calculation phase); and (3) a third phase of trial addressing the issues of whether Defendants County of Riverside (the "County") and Sheriff-Coroner Chad Bianco may be liable under the case law associated with *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 690-691, 694-695 (1978) and/or supervisory liability and associated damages against them (Monell-supervisory liability and damages phase).

Trifurcation of these issues will promote judicial economy and reduce undue prejudice to Defendants because: (a) proof of a constitutional violation by an individual officer-defendant is a prerequisite to establishing municipal liability; (b) evidence of municipal patterns and practices – including but not limited to facts unknown to the defendant deputies at the time of the incident – is cumbersome, time-consuming, issue-confusing, and unduly prejudicial to individual officers through a guilt-by-association effect; (c) proof of liability is a prerequisite to establishing the proprietary, if any, of punitive damages, and their amount; and (d) evidence of defendant wealth or income is private and prejudicial to defendant's interest.

Additionally, in order to further promote judicial economy, Defendants request that the evidence only relevant to one phase (*e.g.*, the *Monell* liability Phase 3 and/or the punitive damages Phase 2) be excluded from earlier phases (*e.g.*, the deputy constitutional violation Phase 1).

**2.  THE COURT SHOULD TRY THE ISSUES OF WHETHER A CONSTITUTIONAL VIOLATION BY A DEFENDANT DEPUTY OCCURRED BEFORE TRIAL OF WHETHER THE COUNTY OR SHERIFF MAY BE HELD LIABLE UNDER *MONELL* TYPE CLAIMS.**

**A.  This Court Is Empowered to Try Issues Separately and to Exclude Evidence at issue in a Later Phase of Trial from an Earlier Phase**

Rule 42(b) of the Federal Rules of Civil Procedure provides, in pertinent part, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  The district court has broad discretion to bifurcate (or, here, trifurcate) a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues.  *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 998 (9th Cir 2001); *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982); *see also Estate of Lopez v. Suhr*, 2016 U.S. Dist. LEXIS 55694, at *4 (N.D. Cal. Apr. 26, 2016) ("Rule 42(b) confers 'broad authority,' and giv[es] the direct court virtually unlimited freedom to try the issues in whatever way trial convenience requires.'").

Thus, the Court retains discretion to bifurcate the issue of *Monell* liability from the issue of whether a constitutional violation has occurred.  *See Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (approving the district court's bifurcation of the *Monell* claims in the interests of convenience and judicial economy and rejecting plaintiff's attempts to introduce policy-custom evidence in the first, rights-violation, trial phase); *Figueroa v. Gates*, 207 F.Supp.2d 1085, 1101-1102 (C.D. Cal. June 11, 2002) (the Court exercised its discretion to bifurcate individual liability from *Monell* claims and further bifurcated the punitive damages claim).  This is because, as explained in more detail below, trial against the entity on *Monell* claims often involves evidence that is unfairly prejudicial to the officer in the jury's evaluation of the officer's alleged misconduct during a specific incident.

Similarly, under Federal Rule of Civil Procedure 42(b), trial of the liability issues of a case may be had separately, or bifurcated, from trial of the issues relevant to punitive or exemplary damages.  *See, e.g., In re USA Comm. Mort. Co.*, 2010 U.S. Dist. LEXIS 127433, \*28-29 (D. Nev. 2010).

**B.     This Court Should Try Plaintiff's *Monell* and Supervisory Liability Claims Separately And Later Because Plaintiff Cannot Establish Such Liability Unless They Have First Proved an Underlying Constitutional Violation by an Individual Defendant Deputy**

Put simply, *Monell* and comparable supervisory liability claims are pendant claims that are <u>not</u> actionable unless an underlying constitutional violation is found against a defendant officer in a specific incident before the *Monell*-supervisory liability analysis is conducted.

**1.     *Monell* Municipal Liability Claims Are Pendant Upon Proof Of Individual Officer-Defendants' Constitutional Violation.**

To elaborate, under 42 U.S.C. § 1983, a municipality or local government – but not a State – may be liable for the constitutional torts of its employees or agents <u>only</u> where deliberate action attributable to the municipality itself is the cause of plaintiff's deprivation of federal rights.  *Monell,* 436 U.S. at 690- 691, 694-695; *see Board of the County Comm'r v. Brown,* 520 U.S. 397, 400 (1997).  Where a municipality's employees or agents – such as its police officers – have engaged in deliberate action that violated a person's federal rights, that municipality cannot be held liable merely under a *respondeat superior* theory.  *Monell,* 436 U.S. at 691.  Rather, plaintiff must prove that the violation of federal constitutional or statutory rights was the result of a policy or custom enacted by those whose "edicts or acts may fairly be said to represent official policy" of that municipality. *Id.* at 695; *see, e.g., City of Canton v. Harris,* 489 U.S. 378, 388-389 (1989) (plurality opinion) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality [e.g., by "deliberate indifference to the rights of persons with whom the police come into contact"] – a 'policy' as

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

defined by our prior cases – can a city be liable for such failure under § 1983."); *see also Collins v. City of Harker Heights,* 503 U.S. 115, 123-124 (1992) ("if a city employee violates another's constitutional rights, the city may be liable if it had a custom or policy...[that] caused the constitutional violation").  Such liability by the municipality, where it applies, is often referred to as "Monell liability."  *See, e.g., Palmerin v. Riverside,* 794 F.2d 1409, 1414 (9th Cir. 1986).

However, before a municipality can be held liable for damages to a plaintiff for the *municipality's* violation of plaintiff's federal rights, plaintiff must first prove that his federal rights have been violated by an *individual* employee of that public entity. As noted in *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986):

> [N]either Monell . . ., nor any of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

*Id; accord Sanchez v. Riverside*, 596 F.Supp. 193, 195 n.3 (C.D. Cal. 1984).

In other words, "absent any constitutional violations by the individual defendants, there can be no *Monell* liability."  *Palmerin,* 794 F.2d at 1414; *see Scott v. Henrich,* 39 F.3d 912, 916 (9th Cir. 1994); *see generally Oklahoma City v. Tuttle,* 471 U.S. 808, 823-824 (1985) (plurality opinion); *cf. Palmerin,* 794 F.2d at 1415 ("[W]hile a *Monell* claim is possible, by its own terms, where the officers' acquittal is due to the good faith immunity accorded certain individuals under section 1983..., it is not possible, by its own terms, if the officers acted constitutionally."); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (government officials performing discretionary functions are shielded from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known).

This prerequisite of proof (constitutional violation by an officer) also applies where plaintiff's theory of *Monell* liability is a failure to train or supervise claim.

Under *Canton,* the threshold requirement of *Monell* is not removed, it is only slightly modified.  In use of force ("UOF") claims, there is no question under the *Monell* case line that proof of an individual officer's constitutional wrongdoing is a prerequisite to establishing municipal liability.  *See Heller,* 475 U.S. at 799.  The *Canton* case line merely expands *Monell*-style liability to claims for failure to train or supervise ("FTT/S") by holding that the "intent" required for prosecution of a claim under 42 U.S.C. § 1983 can be "deliberate indifference" – i.e., a state of affairs demonstrating more than gross negligence in the training or supervision of officers as to represent a deliberate or conscious policy.  *See City of Canton,* 489 U.S. at 380, 388-389.

However, the *Canton* case law does not remove the *Monell* requirement that harm by an individual officer must be proved before municipal liability can be established; rather, the *Canton* cases merely redefine what that harm is. In UOF cases, under *Monell,* a municipality can be held liable for having a policy, or a practice that amounts to a policy, of violating individuals' constitutional rights by authorizing X force to be used in Y circumstances which resulted in Z constitutional violation by an individual officer.  In FTT/S cases, under *Canton,* a municipality can be held liable for having a policy, or a practice that amounts to a policy, of violating individuals' constitutional rights by "intentionally" failing to have, or "intentionally" failing to enforce, a policy authorizing X force to be used in Y circumstances, with the result of such deliberate indifference being Z constitutional violation by an individual officer. *Compare Monell,* 436 U.S. 658 *with Canton,* 489 U.S. 378.   But in both circumstances, an individual officer must have committed harm that results in the constitutional violation, and such harm must be proved before municipal liability may attach.  *See generally Monell,* 436 U.S. 658; *Canton,* 489 U.S. 378.

For example, in *Canton,* in explaining what kinds of conduct may amount to deliberate indifference, the Court observed that where plaintiff alleges a "failure to provide proper training," that "a city may be held liable if it [the failure to provide training] actually causes injury."  *See Canton,* 489 U.S. at 390.  While *Canton* then

goes on to elaborate on how a training program may be proved inadequate, *Canton* presumed, for the purposes of establishing municipal liability, that even though it was not sufficient for a plaintiff to prove that the inadequate training of an individual officer was the cause of plaintiff's constitutional injury, such proof of causation was still necessary to establishing municipal liability. *See id.* at 390-391 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . [because the failings of an individual officer] say[] little about the training program or the legal basis for holding the city liable.").

This is because, even under *Canton,* the court's "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" by a specific officer. *See id.* at 391; *see also Fairley v. Luman,* 281 F.3d 913, 916-917, 917 n.4 (9th Cir. 2002) (though the individual guards were not liable, due to mere negligence, for the unconstitutional detention of a subject, the city could be liable for the guards' implementation of that detention, if it was unconstitutional); *Hopkins v. Andaya,* 958 F.2d 881, 888 (9th Cir. 1992).

**In other words, under both *Monell* and *Canton,* plaintiffs must first prove that an individual officer violated plaintiff's (or decedent's) constitutional rights**; it is only after this threshold proof that the difference between *Monell* and *Canton* becomes significant, in that the manner of attaching liability to the municipality changes depending on whether the claim is UOF (*Monell)* or FTT/S (*Canton).* However, under either theory, proof of a constitutional violation by the individual police officer defendants in a case is an absolute prerequisite to the establishment of municipal liability in that case under *Monell* or *Canton. See Boyd v. City & Cty. of San Francisco,* 2006 U.S. Dist. LEXIS 14047, at *6 (N.D. Cal. Mar. 14, 2006) ("a finding that the individual officers did not deprive [plaintiff or decedent] of his constitutional or statutory rights is dispositive of plaintiffs' claims against the City").

### 2.    Supervisory Liability Claims Against Individuals Are Also Pendant *Monell*-Style Claims.

The standard is the same for establishing supervisory liability against a policy-making individual at a law enforcement agency of a municipality (in this case, Plaintiff's supervisory liability claim against Defendant Sheriff-Coroner Chad Bianco.  A plaintiff may state a claim under Section 1983 against a supervisor for constitutional violations "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (actions against supervisors under section 1983 require that a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right) (internal quotes and citation omitted).

To put it simply, **just as with *Monell* liability, there is no supervisory liability without an underlying constitutional violation by individual defendant officers during a specific incident**.  *Ortega v. Ritchie*, 708 Fed. Appx. 446, 447 (9th Cir. 2018) (affirming that the district court properly granted summary judgment on supervisory liability claims because there was no triable dispute as to whether there was any underlying constitutional violation); *accord Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009); *Whiting v. Dep't of the Cal. Highway Patrol*, 2020 U.S. Dist. LEXIS 178167, at *23-24 (C.D. Cal. Sept. 1, 2020).

Thus, should Plaintiff fail to establish such a constitutional violation by the individual deputy defendants (here, defendants Keeney and Gomez), Plaintiff's claims for municipal/supervisory liability also fail.

Accordingly, rather than proceed to trial of *Monell*-type issues that may not be ripe for trial, in the interests of judicial economy, the Court should require Plaintiff to prove that an individual officer constitutional violation has occurred during the incident at issue before trial proceeds to the issue of whether that violation permits the City or Sheriff to be held liable.

### C.   The Court Should Try Plaintiff's *Monell* and Supervisory Liability Claims Separately Because Evidence Related to Proof of Such Liability is Unduly Prejudicial to Defendant Deputies.

Moreover, as Plaintiff's arguments repeatedly underscore, Plaintiff seeks to unfairly prejudice the individual defendant deputies by having the Court and/or the jury adjudge the reasonableness of the officers' incident conduct by reference to facts that were unknown to the deputies at the time of their incident force (namely, for example, the alleged risk of "positional asphyxia" from prone restraint, and related, non-legally-mandated techniques imposed by non-party agencies on non-party officers, but not by the Riverside County Sheriff's Department): a violation of the *Graham* rule governing analysis of officer seizures and force.  To elaborate:

> The risk of prejudice to individual officers from introducing evidence relevant to municipal liability in excessive force cases is understandably high, due to the often jarring and shocking nature of excessive force allegations.  If a plaintiff claims that an officer-defendant used excessive force against him, the jury, in determining whether that officer-defendant did use excessive force, would have to consider whether the force employed was justified under the circumstances presented.  If, however, evidence of other instances or allegations of excessive use of force involving other officers employed by the same police department was introduced to the jury, there is a risk "that evidence relevant to municipal liability may unfairly prejudice [the] government officials whose individual liability is being tried in the same case."

*Motley v. City of Fresno*, 2020 U.S. Dist. LEXIS 118160, at *8 (E.D. Cal. July 5, 2020) (quoting *Miniter v. City of Los Angeles*, 2011 U.S. Dist. LEXIS 161186 at *6 (C.D. Cal. July 5, 2020).

Similar to *Motley*, the Ninth Circuit in *Quintanilla v. City of Downey*, *supra*, determined that counsel's offering of evidence to show that the policy of using policing dogs was unconstitutional, rather than the use of the particular police dog by individual officers, was premature because it "could well have unfairly prejudiced the Chief and city and confused the jury as it considered the individual officers' actions." *Quintanilla*, 84 F.3d at 356 (affirming the district court's decision and noting that

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

8

"bifurcation allowed the court to separate the questions of the three officers' actions from the questions regarding the Chief and the city's liability under *Monell*.").  Here too, there is a high risk of prejudice in introducing evidence relevant to Plaintiff's municipal and supervisory liability claims during an analysis of the reasonableness of the defendant officers' force when an excessive force claim is involved.  *See, e.g.*, *Knox v. City of Fresno*, 2016 U.S. Dist. LEXIS 72808 at *4 (E.D. Cal. June 1, 2016) (finding bifurcation appropriate due to risk of juror confusion – "While the individual liability claims will require the jury to consider what a reasonable officer would or should have known in construing the objective reasonableness of the officers' actions, the municipal claims will involve the introduction of evidence that the officers did not know and that no reasonable officer would know."); *Green v. Cty. of Los Angeles*, 2014 U.S. Dist. LEXIS 5895 at *2 (C.D. Cal. Jan. 16, 2014) (finding bifurcation appropriate "in light of the potential for undue prejudice"); *Hwang v. City & Cty. of San Francisco*, 2008 U.S. Dist. LEXIS 83022 at *7-9 (N.D. Cal. Sept. 30, 2008) (holding that bifurcation was warranted where the vast majority of the evidence admissible against the City on the municipal liability claim was not also admissible against the individual officers on the excessive force claim, and admission of the evidence would, as such, likely be unduly prejudicial); *Boyd*, 2006 U.S. Dist. LEXIS 14047 at *5-9 (bifurcating in excessive force case based, in part, on prejudice to individual defendants).

> **1.     Under *Graham*, The Reasonableness Of The Defendant Officers' Use Of Force Cannot Be Adjudged Using Facts Unknown To Them At The Time.**

Moreover, Plaintiff's prior pleadings in this action and Plaintiff's counsel's representations before this Court indicate that Plaintiff is attempting to improperly assign liability to these Defendant Deputies based on their failure to use a "recovery" position and avoid the (disputed) alleged risks of "positional asphyxia" from prone restraint: which Defendant Deputies were not trained in and were not aware of any

1   such training to use a "recovery" position.  [*See* Dkt. 92, 101.]

2   This is improper because, as extensive precedent makes crystal clear, **both for**

3   **federal-law and California-law claims arising from a police seizure, the**

4   **reasonableness of an officer's use of force/seizure can <u>only</u> be adjudged based on**

5   **facts and circumstances known to the force-using officer *at the time the force was***

6   ***used*: facts unknown to the officer <u>cannot</u> play any role in the reasonableness**

7   **analysis of the force or seizure related conduct of the individual deputies**

8   **regarding their incident actions**.  *Graham v. Connor*, 490 U.S. 386, 396 (1989)

9   (reasonableness adjudged only by facts known at the time and not with the 20/20

10  vision of hindsight); *accord Brown v. Trejo*, 818 Fed. Appx. 559, 602 (9th Cir. 2020)

11  ("We assess the reasonableness of force 'from the perspective of a reasonable officer

12  on the scene,' *using the facts known to the officer at the time . . .*"); *Halbert v. Cty. of*

13  *San Diego*, 2010 U.S. Dist. LEXIS 30563, *25 (S.D. Cal., Mar. 30, 2020);

14  *Hernandez v. City of Pomona*, 46 Cal.4th 501, 513 (2009) (holding that California

15  reasonableness standard is the same as the *Graham* reasonableness standard); *Brown*

16  *v. Ransweiler,* 171 Cal.App.4th 516, 527-528 (2009).  [See Dkt. 92 (further discussing

17  that facts not known to the Defendant Deputies at the time of the incident cannot be

18  considered in the reasonableness analysis).]

19  To elaborate, "the 'reasonableness' inquiry in an excessive force case is an

20  objective one: the question is whether the officers' actions are 'objectively reasonable'

21  in light of the facts and circumstances confronting them, without regard to their

22  underlying intent or motivation." *Graham*, 490 U.S. at 396-397 (citations omitted).

23  The reasonableness of an officer's use of force/seizure can only be adjudged

24  based on facts and circumstances known to the force-using officer *at the time the force*

25  *was used*: facts unknown to the officer cannot play any role in the reasonableness

26  analysis.  *Id.* at 396.  "We assess the reasonableness of force 'from the perspective of

27  a reasonable officer on the scene,' *using the facts known to the officer at the time….*"

28  *Brown*, 818 Fed. Appx. at 602 (emphasis added).  "The '"reasonableness" of a

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' [Citation]. The court therefore considers *the facts known to Defendants at the time of the incident*." *Halbert*, 2010 U.S. Dist. LEXIS at *25 (emphasis added); *accord Watson v. City of San Jose*, 765 Fed. Appx. 248, 250-251 (9th Cir. 2019); *Forrester v. City of San Diego*, 25 F.3d 804, 808, n. 4 (9th Cir. 1994); *Glenn v. Washington Cty.*, 673 F.3d 864, 873 n. 8 (9th Cir. 2011); *Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013); Cal. Penal Code § 835a.

In this vein, the U.S. Supreme Court holds that "judges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *See Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (reversing the Ninth Circuit and ordering summary judgment for the officers where, "with the benefit of hindsight and calm deliberation,...[the lower court had] concluded that it was unreasonable for [the officers] to fear that violence was imminent").

"[A]fter-the-fact analysis violates the fundamental precept of *Graham*; namely, 'the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' [Citation]." *Forrester v. City of San Diego*, 25 F.3d 804, 808, fn.4 (9th Cir. 1994). "Information gained after the fact cannot be relied upon in analyzing the propriety of the officers' conduct." *Scott v. Henrich*, 700 F.Supp. 498, 505 (D. Mont. 1988) *aff'd by Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994). "Information acquired by an officer after he uses force is not relevant in the excessive force analysis, which requires consideration of whether the force would have been reasonable given the information that was available to the officer at the time of the incident—and not with 'the 20/20 vision of hindsight.'" *M.R. v. City of Azusa*, 2014 U.S. Dist. LEXIS 204804, *3 (C.D. Cal., Oct. 1, 2014); *see also Baldridge v. City of Santa Rosa*, 1999 U.S. Dist. LEXIS 1414, at *20-21 (N.D. Cal. Feb. 9, 1999) (holding that it was irrelevant that the decedent was unarmed as his actions alone "could cause a reasonable officer to fear

imminent and serious physical harm."); *Sherrod v. Berry*, 856 F.2d 802, 805-807 (7th Cir. 2008) (whether a gun was found at the scene is irrelevant to a determination of whether an officer acted reasonably under the circumstances); *Rippey v. Dopp*, 19 Fed.Appx. 702, 703 (9th Cir. 2001) (citing *Sherrod* and declining to reverse the exclusion of the suspect being unarmed); *Barnes v. City of Pasadena*, 508 Fed. Appx. 663, 665 (9th Cir. 2013) ("Even if an issue of fact existed about the presence of a gun, the determinative issue was whether the officers reasonably believed [suspect] had a gun and posed an immediate threat to safety.")

California law also holds that officers' seizure-related conduct can only be adjudged with facts and information actually known to them at the time of the seizure. *Hayes,* 57 Cal.4th at 632; *Hernandez,* 46 Cal.4th at 514; *Martinez v. County of L.A.*, 47 Cal.App.4th 334, 343 (1996); *Koussaya v. City of Stockton*, 54 Cal.App.5th 909, 934 (2020).

## 2.   Officers Are Required To Know Legal Mandates, <u>Not</u> What Non-Party Agencies May Teach.

Similarly, procedures and training used by non-party entities, as opposed to procedures and training by the defendant officers' employing agency, are similarly irrelevant.  *See Knox,* 2016 U.S. Dist. LEXIS 72808 at *3-4 (discussing how "individual liability claims will require the jury to consider what a reasonable officer would or should have known in construing the objective reasonability of the officers' actions" so "the introduction of evidence that the officers did not know" would likely confuse jurors).  Contrary to Plaintiff's repeated and erroneous assertion that officers are required to know non-party teachings on police practices, as though such non-party procedures were "rules of law," and as though failure to use non-party teachings to evaluate the reasonableness of the officers' conduct would be to allow the officers to evade liability by "ignorance," such is *not* the case: particularly where, as here, those non-party police practices are <u>not</u> mandated by controlling law. *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001) ("[O]ur focus is on whether a

1   reasonable officer would have known that the deputies' conduct violated [plaintiff's]

2   federal statutory or constitutional rights rather than merely a state law or police

3   provision."); *see Drummond v. City of Anaheim*, 343 F.3d 1052, 1069 (9th Cir. 2003)

4   (noting that outside training material are not dispositive when conducting an excessive

5   force reasonableness analysis).   While it is true that officers cannot claim ignorance

6   of the controlling law as a defense to their unreasonable seizures, *see Heien v. North*

7   *Carolina*, 135 S.Ct. 530, 539-540 (2014), Plaintiff here misleadingly conflates what

8   some non-party agencies teach about risk management regarding the alleged risk of

9   "positional asphyxia" into a rule of law: but such are apples and oranges.   Put simply,

10  there is no controlling case law that holds that prone restraint is always

11  unconstitutional, even with some officer weight on an unresisting suspect.   *See, e.g.*,

12  *Price v. County of San Diego*, 990 F.Supp. 1230, 1234-1240 (S.D. Cal. 1998) (where

13  a deputy used a knee to restrain a resisting, prone subject, and there was insufficient

14  evidence that restraint had significantly impaired the subject's breathing, prone

15  restraint, even with weight force applied to the torso, was constitutional).

16      While some non-party agencies do suggest that prone restraint *might* possibly

17  lead to positional asphyxia, such suggestion is contrary to the weight of the peer-

18  reviewed medical evidence.   [Dkt. 49 at p. 15.]   But there is no controlling case that

19  holds that prone restraint of a non-resistive subject, even with some weight on the

20  suspect's back always or even most of the time is likely to cause asphyxia, nor is there

21  any controlling case that mandates that prone, cuffed suspects must be moved into a

22  "recovery position" as soon as they are secured, post-resistance.   *See Tatum v. City &*

23  *Cty. of San Francisco*, 441 F.3d 1090, 1097-1098 (9th Cir. 2006) (finding reliance on

24  *Estate of Phillips*, 123 F.3d 586 (7th Cir. 1997) to be appropriate and that the officer's

25  use of a control hold to force a suspect on the ground on his stomach was objectively

26  reasonable); *A.B. v. Cty. of San Diego*, 2020 U.S. Dist. 182507 at *53-64 (S.D. Cal.

27  Oct. 1, 2020) (finding defendant deputies to be entitled to qualified immunity with

28  respect to force used to restrain an individual in a prone position).   Thus, Plaintiff's

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

suggestion that "positional asphyxia" and/or "recovery position" training is a legally-mandated rule that officers are required to know is patently false.

Moreover, contrary to the obligation for all officers to know the legal mandates, precedent holds that defendant officers' seizures are <u>not</u> to be adjudged using training programs or practices that were not provided to them; rather, the reasonableness of their force is only adjudged by the legal mandates at the time and the training and policies taught to the defendant officers. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (stating that a government official's conduct violates clearly established law when, *at the time of the challenged conduct*, the contours of a right are sufficiently clear that ever reasonable official would have understood that what he is doing violates that right); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("The relevant question in this case . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, *in light of clearly established law and the information the searching officers possessed*.") (emphasis added).

It is undisputed in this case that: (1) at the time of the incident and since the late 1990s, RSD does not train its deputies about any so-called "positional asphyxia" risk, or associated "recovery position" risk management techniques, because, based on the prevailing medical science known to RSD, there is no such risk; and (2) at the time of the incident, defendant Deputies Keeney and Gomez were unaware of any so-called "positional asphyxia" risk or of Plaintiff's version of the "recovery position" technique (which Defendants dispute)[1].  [Dkt. 109 at pp. 5, 12.]

---

[1]     Plaintiff contends that it is a nationally-standard police practice that, when a prone-restrained resistive subject is secured in handcuffs, even if that subject is still resisting, the subject is to be moved into a "recovery position" to avoid the so-called risk of "positional asphyxia."  Defendants contend that this misstates what the widely adopted "recovery position" training is: namely, Defendants contend that the nationally-standard police practice is to only move prone-restrained, cuffed subjects into an on-the-side, seated, or supine "recovery position" (1) if the subject is no longer

Accordingly, as it is *Graham*-impermissible to allow such facts unknown to the defendant officers to be introduced into evidence during the analysis of the reasonableness of the officers' seizure-related conduct, the risk of prejudice is even higher in this matter where Plaintiff seeks to bring in evidence of police procedures and training that differ from those that were known to the Defendant Deputies at the time of their seizure/use of force.

Along these lines, evidence of customs, training, and policies will likely involve the actions of non-party officers and involving non-party subjects/witnesses revolving around incidents in which Defendant Deputies had no role: essentially opening the door to impugning the conduct of Defendant Deputies with the misdeeds or alleged misconduct of other officers for whom the Defendant Deputies had no authority or responsibility.  *See Boyd*, 2006 U.S. Dist. LEXIS 14047 at *8; *see generally* Fed. R. Evid. 403.

Similarly, evidence of the County and Sheriff-Coroner Bianco's alleged deficiencies or purported misconduct unfairly impugns the Defendant Deputies with alleged wrongdoing over which they would have had no control: improperly allowing an inference of wrongdoing by another party to attach to the Defendant Deputies.  *See id.*; *Jones v. City of Chicago,* 1999 U.S. Dist. LEXIS 3358, *8-9 (N.D. Ill. 1999) (finding a substantial risk of severe prejudice to individual officers existed if *Monell* liability evidence was introduced where plaintiff planned to prove his *Monell* claims by introducing various acts of alleged police misconduct and excessive force committed by numerous non-party officers).

Therefore, this Court should bifurcate the *Monell* and supervisory liability

_____

resisting, and fully under control, and (2) if a serious medical problem requiring closer monitoring of the face is observed, such as if breathing difficulties are observed by the restraining officer(s).  It is undisputed that, here, the defendant deputies moved decedent into a supine position as soon as they suspected he might be having some serious medical problem: a concern that, in their minds, they dispelled by the pulse-check.  [Dkt. 109 at pp. 4-5.]

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

issues in order to avoid unfair prejudice to the Defendant Deputies in this action as a result of the guilt-by-association that is otherwise likely to result absent separate trial of these issues.  In other words, since it is *Graham*-prohibited for facts unknown to the defendant officers to be used to adjudge the reasonableness of their seizure-related conduct, including training procedures taught by non-party agencies, Plaintiff's evidence on the various non-party entities' training on "positional asphyxia," "recovery position," and other techniques that are not legally mandated by case law, as well as comparable incidents involving non-party persons, are legally irrelevant and unfairly prejudicial to the Deputy Defendants: and, as a result, such non-party evidence must <u>not</u> be admitted during the analysis of the officers' incident conduct.

**D.     The Court Should Try Plaintiff's *Monell* Claims Separately Because Evidence Related To Proof of *Monell* Liability Is Also Cumbersome and Time Consuming.**

While proof of an individual officers defendant's liability for a constitutional violation typically involves evidence and testimony regarding a single incident, proof of *Monell* liability invariably involves the presentation of evidence that goes to the unlawful nature of the municipality's policies or customs: typically by introduction of multiple incidents or extensive policies and procedures used by non-party police agencies or associations which were unknown to the Defendant Deputies, some of which may not involve the individual defendant officers at all.  *See, e.g., Boyd,* 2006 U.S. Dist. LEXIS 14047 at *8.

Plaintiff will necessarily need evidence regarding a number of incidents of rights-violations, potentially involving non-party officers and/or non-party subjects or witnesses – evidence with no apparent relevance to the claims against Defendant Deputies: this is because, absent an explicit policy that, on its face, violates federal rights, in order to establish *Monell* liability, Plaintiff must establish that the violations claimed were part of an official custom or practice.  *See id.; see generally Larez v. Los Angeles,* 946 F.2d 630, 635 (9th Cir. 1991).  In other words, "[p]roof of a single

incident of unconstitutional activity is not sufficient to impose liability under *Monell."* Thus, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case . . . ." *Tuttle,* 471 U.S. at 823; accord *Canton,* 489 U.S. at 399-400; *Davis v. Ellensburg,* 869 F.2d 1230, 1233-1234 (9th Cir. 1989) (explaining that the more-than-a-single-incident rule arises from the Court's determination that liability for constitutional violations cannot arise from respondeat superior type theories); *Avalos v. Baca,* 596 F.3d 583, 587-589 (9th Cir. 2010).

Moreover, in light of the multiplicity of incidents and non-party practices that is required for such proof, presenting such custom or practice evidence is routinely time-consuming, cumbersome, and may cause a jury to confuse the issues. *See Sanchez,* 596 F.Supp. at 194 ("[E]stablishing (and defending against) the City's liability under Monell . . . would be a time-consuming exercise which would, in all probability, be rendered moot by the resolution of plaintiffs' claims against the individual officers.").

As Plaintiff must prove a constitutional violation by Defendant Deputies before *Monell* liability can be established, and because establishing *Monell* liability can be so cumbersome, federal courts have often concluded that "[t]here is significant judicial economy in separating the question of the constitutionality of the actions of the individual officers from the question of municipal liability under *Monell* . . . ." *E.g., Arnold v. City of Scappoose,* 2001 U.S. Dist. LEXIS 13359 at *2-3, 5 (D.Or. Aug. 20, 2001) (granting the defendant's motion for bifurcation of the *Monell* issues and staying discovery on the *Monell* issues until after the first phase of the trial had been resolved because doing so was conducive to judicial expediency and economy and would avoid undue prejudice to the individual defendants); *Figueroa,* 207 F.Supp.2d at 1102 (granting defendant's motion to bifurcate the *Monell* issues from the individual liability claims because doing so "will promote convenience and efficiency").

Less of the Court's and the parties' resources will be consumed if the Pandora's Box of *Monell* issues – and their related non-party evidence – is left closed until it is absolutely necessary to open it – *i.e.*, when the constitutional violations of a party officer, if any, are established.  Thus, separate trial of the *Monell* issues fosters judicial economy by delaying the introduction and review of cumbersome evidence until the *Monell* liability threshold has first been met: namely, proof of an officer-party's underlying constitutional violation during the incident at issue.

### E. Where Plaintiff Claims That Failure to Allow Evidence of Non-Party Practices Against the Defendant Deputies Allows Them to Escape Being Judged By the Controlling Legal Standard, Plaintiff Misstates the Law

As discussed above and Defendants' Motion in Limine to Exclude Facts Unknown to Defendant Deputies Including But Not Limited to So-Called "Recovery" Position Training [Dkt. 92], Plaintiff is attempting to introduce evidence of non-party police practices of "recovery" position training, which Plaintiff defines as "standard" police training where all controlled, non-resistive prone subjects are rolled into on-the-side or supine position, regardless of circumstances, as if it is a legal "rule." However, officers are held accountable for knowing the *legal* standards and requirements as announced by courts, <u>not</u> what other agencies are allegedly using as "standard" practices.

As an initial matter, Defendants vehemently dispute the recovery "rule" as defined Plaintiff.  Defendants consider the recovery "rule" to be the national police community standard that controlled, non-resistive prone subjects are rolled into on-the-side or supine position *only if a dangerous medical problem is observed* or an officer's department mandates such "recovery" position.  However, regardless of this dispute, it is undisputed that there is no court case of controlling law that mandates a recovery position "rule" for prone restraint nor that defines or states such a "rule."

Moreover, courts have held that officers' reliance on their own department policies, even if unconstitutional, is objectively reasonable. *Way v. County of Ventura*, 445 F.3d 1157, 1163, 1166 (9th Cir. 2006) (Because the policy had not fallen into desuetude and was not patently violative of fundamental constitutional principles, it was objectively reasonably for officers to rely on the policy.) (conc. op. of Wardlaw, J.); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("Courts have accordingly held that the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional.") (citing *Evers v. Cnty. of Custer*, 745 F.3d 1196, 1203 (9th Cir. 1984)).  Thus, it logically follows that, while officers are required to know the controlling law, *i.e.*, what actions are patently unconstitutional, they are not required to know policies and training outside of their own agency.  To hold individual officers responsible for not undertaking, let alone not knowing, practices and training not implemented by their own agency would be extreme and nonsensical.

Thus, Plaintiff should not be allowed to introduce evidence of non-party practices against Defendant Deputies where, as here, Defendant Deputies received specific training from the County that they reasonably relied upon during the incident in question.  Otherwise, Plaintiff would be asserting her definition of "recovery" position and "positional asphyxia" training as a constitutional standard in determining whether Defendant Deputies used excessive force when no such precedence exists.

**3.    THE COURT SHOULD ALSO SEPARATELY TRY PUNITIVE DAMAGE CALCULATION ISSUES.**

The Court should also separately try the punitive damages calculation issues in this case to avoid undue prejudice to the Defendants and advance the interests of judicial economy.  Courts have held that "[i]ssues of punitive damages should normally be bifurcated from issues of liability so that proof of wealth is not admitted at the trial on liability and compensatory damages. [citations]." *Collens v. City of New York,* 222 F.R.D. 249, 254 (S.D.N.Y. 2004); *see generally Bates v. United Parcel*

Manning&Kass
Ellrod, Ramirez, Trester LLP
ATTORNEYS AT LAW

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

*Serv.,* 204 F.R.D. 440, 448-449 (N.D. Cal. 2001) (approving bifurcation of punitive damages where evidence and issues going to punitive damages was separate and distinct from evidence going to liability), rev'd on other grounds at 551 F.3d 974 (9th Cir. 2007).  The rationale for such bifurcation (or trifurcation) rests on the fact that "[p]unitive damages are to be tailored to the defendant's ability to pay, and normally that class of evidence is not admitted nor desirable during the liability and compensatory damages phase of the case. [citations]."  *Vosbinder v. Ambach,* 926 F.2d 1333, 1344 (2d Cir. 1991); *see also Spears v. Anderson,* 2009 U.S. Dist. LEXIS 36792, *2 (D. Nev. 2009) (bifurcating punitive damages where court found that evidence of wealth/financial status would likely confuse the issues and mislead jury).

Moreover, as a finding of liability is a prerequisite to an award of punitive damages, separate trial of the punitive damages *calculation* will also promote efficiency and judicial economy by preventing the consumption of the jury's time if the jury finds (as it should) that there is no liability on the part of the Defendant Deputies.  In light of the foregoing, separate trial of the punitive damages calculation will promote efficiency at trial and reduce the risk of undue prejudice to the Defendant Deputies.

## 4.    CONCLUSION.

For all of the foregoing reasons, and in light of the above authorities, and in furtherance of judicial interests of justice and economy, Defendants respectfully request that this Court issue an order trifurcating trial into the following phases: (1) a first phase of trial addressing the liability of the Deputy Defendants Keeney and Gomez for the underlying incident, as well as compensatory damages pertaining thereto against the individual officers, and the punitive damages predicate (individual deputy constitutional liability phase); (2) a second phase of trial addressing the issues of whether Plaintiff is entitled to a specific amount of punitive damages against the Deputy Defendants (punitive damages calculation phase); and (3) a third phase of trial addressing the issues of whether Defendants County of Riverside (the "County") and

Sheriff-Coroner Chad Bianco may be liable for the pendant claims brought under the case law associated with *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 690-691, 694-695 (1978) and/or supervisory liability and associated damages against them (*Monell*-supervisory liability and damages phase).

DATED:  August 27, 2021          **MANNING & KASS**
                                 **ELLROD, RAMIREZ, TRESTER LLP**


                                 By:  _____*/s/Tony M. Sain*_____
                                      Tony M. Sain, Esq.
                                      Garros Chan, Esq.
                                 Attorneys for Defendants,
                                 COUNTY OF RIVERSIDE, (erroneously
                                 named as separate parties as COUNTY OF
                                 RIVERSIDE and, RIVERSIDE
                                 SHERIFF'S DEPARTMENT), SHERIFF-
                                 CORONER CHAD BIANCO, DEPUTY
                                 GOMEZ and DEPUTY KEENEY