**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRACY ALVES, Individually and as Successor in Interest for Kevin R. Niedzialek, deceased, | No. 23-55532 |
| | D.C. No. 5:19-cv-02083-JGB-SHK |
| *Plaintiff-Appellee*, | |
| v. | OPINION |
| COUNTY OF RIVERSIDE; CHAD BIANCO, | |
| *Defendants-Appellants*, | |
| and | |
| SONIA GOMEZ; BRIAN KEENEY, | |
| *Defendants*. | |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted July 17, 2024
Pasadena, California

Filed April 29, 2025

Before: Kim M. Wardlaw and Gabriel P. Sanchez, Circuit
Judges, and Barbara M. G. Lynn,[*] District Judge.

Opinion by Judge Sanchez

## SUMMARY[**]

### Excessive Force

The panel affirmed the district court's judgment for
plaintiff and its denial of defendants' motion for judgment
as a matter of law following a jury's mixed verdict in an
action brought pursuant to 42 U.S.C. § 1983 and state law
alleging that County of Riverside Sheriff's Department
deputies used excessive force under the Fourth Amendment
and were negligent under California law in restraining Kevin
Niedzialek in a prone position after he was handcuffed until
he stopped breathing.

A civil jury returned a mixed verdict, finding that the
deputies had not used excessive force or restraint against
Niedzialek under the Fourth Amendment but had acted
negligently under California law. The district court entered
a judgment of $1.5 million for plaintiff. Defendants moved
for judgment as a matter of law, contending that the jury's
mixed verdicts could not be reconciled because the legal

---

[*] The Honorable Barbara M. G. Lynn, United States District Judge for
the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

standard governing the reasonableness of the deputies' conduct was the same for both claims.

The panel held that the jury's excessive force and negligence verdicts were reconcilable because California tort law's "reasonable care" standard, which considers the totality of circumstances surrounding any use of deadly force, is broader and distinct from the Fourth Amendment's reasonableness standard. The jury was therefore permitted to evaluate the totality of the circumstances for each claim in distinct ways. Accordingly, the jury could have determined from the evidence at trial that the deputies did not apply excessive force after Niedzialek was handcuffed but nevertheless breached their duty of care when they failed to monitor his condition or place him in a recovery position as he lay unresponsive and in a prone position for over four minutes. Because it was possible to reconcile the jury verdicts based on the evidence and theories presented at trial, the panel affirmed the district court's judgment.

---

**COUNSEL**

John Burton (argued), The Law Offices of John Burton, Pasadena, California; Dale K. Galipo and Hang D. Le, Law Offices of Dale K. Galipo, Woodland Hills, California; T. Kennedy Helm IV, Helm Law Office PC, Oakland, California; for Plaintiff-Appellee.

Tony M. Sain (argued) and Abigail J.R. McLaughlin (argued), Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California, for Defendants-Appellants.

**OPINION**

SANCHEZ, Circuit Judge:

Following the death of Kevin Niedzialek during an encounter with two deputies from the Riverside County Sheriff's Department, a civil jury returned a mixed verdict finding that the deputies had not used excessive force or restraint against Niedzialek under the Fourth Amendment but had acted negligently under California law. Defendants moved for judgment as a matter of law, contending that the jury's mixed verdicts cannot be reconciled because the legal standard governing the reasonableness of the deputies' conduct is the same for both claims. As the California Supreme Court made clear in *Hayes v. County of San Diego*, California tort law's "reasonable care" standard is distinct from the Fourth Amendment's "reasonableness" standard. 57 Cal. 4th 622 (2013). California law, which considers the totality of the circumstances surrounding any use of deadly force, is broader than federal Fourth Amendment law. Defendants' contention that *Hayes* should be limited to an officer's pre-force conduct and decisions is belied by the court's discussion of broad principles of state negligence law and the differences between the federal and state law standards.

The jury was therefore permitted to evaluate the totality of the circumstances for each claim in distinct ways. The jury could have determined from the evidence at trial that the deputies did not apply excessive force after Niedzialek was handcuffed but nevertheless breached their duty of care when they failed to monitor his condition or place him in a recovery position as he lay unresponsive and in a prone position for over four minutes. Because it is possible to

reconcile the jury verdicts based on the evidence and
theories presented at trial, we affirm the judgment below.

## I.

The circumstances giving rise to this tragic incident were
captured by Deputy Sonia Gomez's body worn camera and
are largely undisputed.

## A.

On the afternoon of July 29, 2019, the Riverside County
Sheriff's Department dispatch received several 911 calls
from an apartment complex in Temecula, California. The
callers reported that an unarmed man, wearing pajama pants
and no shirt, was having a "psychotic meltdown" and
bleeding from a head wound. He was knocking on doors,
yelling to himself, and fighting a tree. The man was later
identified as the decedent Kevin Niedzialek.

Deputies Brian Keeney and Sonia Gomez responded to
the scene shortly after 2:30 p.m. The deputies arrived
separately and approached Niedzialek from different
directions. Deputy Gomez activated her body camera as she
approached Niedzialek's location.[1] Deputy Keeney was not
wearing a body camera. The deputies encountered
Niedzialek seated in an alcove without shoes. Niedzialek
was bleeding from the head and speaking incoherently. Both
deputies requested medical assistance. They believed that
Niedzialek was under the influence of a controlled substance
or experiencing a mental health crisis.

As Deputies Keeney and Gomez approached Niedzialek,
he abruptly stood up and advanced toward Deputy Keeney.

---

[1] We grant Plaintiff's motion to transmit the composite video exhibit,
which was admitted in evidence and played for the jury.

Deputy Gomez deployed her taser in dart mode, striking
Niedzialek on his right bicep and on the right side of his
ribcage.  Niedzialek fell to the ground.  Deputy Keeney
moved toward Niedzialek to restrain him.  Niedzialek began
to sit up, causing Deputy Keeney to retreat and command
Niedzialek to put his hands behind his back and lie down.
Niedzialek stood up and advanced towards Deputy Keeney
a second time.  Deputy Gomez deployed her taser again.
Niedzialek fell forward and landed on the ground.

Deputies Keeney and Gomez struggled to handcuff
Niedzialek as he lay face down, kicking and flailing his legs.
Deputy Keeney placed his right knee on the left side of
Niedzialek's back and held Niedzialek's left wrist.  Deputy
Gomez attempted to gain control of Niedzialek's right arm
while retrieving her handcuffs.  After struggling for about 35
seconds, Deputy Gomez secured both of Niedzialek's hands
behind his back in handcuffs.  Deputy Gomez then made a
second call for paramedics.

After Niedzialek was handcuffed, he continued bucking,
kicking, rolling about, and flailing his legs.  Niedzialek told
the deputies, "Need help" and "Get me up," but Deputy
Gomez did not hear him.  Deputy Keeney removed his right
knee from Niedzialek's back.  When Niedzialek rolled to his
left side, Deputy Keeney once again placed his right knee on
the left side of Niedzialek's back near his shoulder blade.
Deputy Gomez placed her right hand near the middle of
Niedzialek's back between his shoulder blades.

Approximately   45   seconds   after   Niedzialek's
handcuffing, his movements stopped.  Niedzialek began to
make "grunting" or "moaning" noises.  Deputy Keeney
lifted his knee from Niedzialek's back, but Deputy Gomez
kept her right hand on Niedzialek's back.  Two and a half

minutes later, Deputy Gomez asked Niedzialek for his name. Niedzialek did not respond. Another minute and twenty seconds elapsed before Deputy Keeney noticed that Niedzialek might not be breathing. Deputies Keeney and Gomez rolled Niedzialek onto his back. By this time, Niedzialek had not moved in over four minutes.

Deputy Gomez checked for a pulse but did not feel one. After repositioning herself, Deputy Gomez checked for a pulse again and detected a "low faint pulse." Neither deputy performed CPR on Niedzialek before paramedics arrived. Paramedics arrived two minutes after Niedzialek had been rolled onto his back and determined that he was not breathing. Paramedics instructed the deputies to begin CPR on Niedzialek. Deputy Keeney and others performed CPR on Niedzialek until he was transported to the hospital. Niedzialek died the following day.[2]

**B.**

Niedzialek's successor-in-interest, Plaintiff Tracy Alves, brought suit against the County of Riverside, Sheriff-Coroner Chad Bianco, and Deputies Keeney and Gomez under 42 U.S.C. § 1983 for excessive force and deliberate indifference to Niedzialek's medical needs under the Fourth and Fourteenth Amendments, and state law claims under the Bane Act, battery and negligence. The district court granted Defendants' summary judgment motion as to Plaintiff's deliberate indifference and Bane Act claims. Plaintiff's

---

[2] Riverside County Medical Examiner Mark Fajardo conducted Niedzialek's autopsy. Dr. Fajardo concluded that Niedzialek's death was caused by methamphetamine, noting that Niedzialek had more than three times the minimum toxic amount of methamphetamine in his system. Dr. Fajardo ruled out asphyxiation or internal injury as a cause of Niedzialek's death.

claims for excessive force, battery, and negligence were tried
before a jury. At Plaintiff's request, the district court
dismissed all claims against Deputies Keeney and Gomez
before trial began.

Plaintiff's federal excessive force and state law battery
claims were based on her contention that Deputies Keeney
and Gomez subjected Niedzialek to unreasonable force or
restraint by holding him down on his chest in a prone
position after he was handcuffed, which prevented him from
sitting up or breathing and caused him to asphyxiate and
die.[3] For the negligence claim, Plaintiff asserted that
Deputies Keeney and Gomez owed Niedzialek a duty of
care, breached their duty by failing to move Niedzialek into
a recovery position, monitor his pulse or breathing, or
perform CPR before the arrival of paramedics, and that the
deputies' actions were a substantial factor in causing
Niedzialek's death.

Plaintiff's law enforcement expert Jeffrey Noble
testified that the national standard of care in policing
requires moving an arrestee into a recovery position as soon
as possible after handcuffing by rolling them to their side or
sitting them up to facilitate breathing and prevent
asphyxiation. Noble opined that the County of Riverside's
policy, which directs officers to hold individuals in an
agitated state chest down until paramedics arrive, ignores
this generally accepted practice. Noble cited publications by
the United States Department of Justice, California Peace

---

[3] California battery claims are coextensive with claims for excessive
force under the Fourth Amendment. *See Edson v. City of Anaheim*, 63
Cal. App. 4th 1269, 1272–73 (1998).

Officer Standards and Training, and multiple other law enforcement agencies.

Plaintiff's cardiologist Daniel Wohlgelernter disagreed with Riverside County Medical Examiner Dr. Fajardo's conclusion that methamphetamine was the sole cause of Niedzialek's cardiac arrest. Dr. Wohlgelernter testified that after his handcuffing, Niedzialek had substantial oxygen needs along with a buildup of blood acid caused by methamphetamine in his system, his head wound, agitation, and his physical encounter with the Deputies, including two tasings. Niedzialek was prevented from overcoming an "oxygen debt" when Deputies Keeney and Gomez restrained him in a prone position with pressure applied to his back, rather than putting him in a recovery position where he could breathe more deeply. Dr. Wohlgelernter opined that the "lethal comb[ination]" of decreasing oxygen levels and increasing acid levels led Niedzialek to suffer pulseless electrical activity ("PEA") cardiac arrest, a "muscle paralysis of the heart." Dr. Wohlgelernter testified that if methamphetamine had been the sole cause of Niedzialek's death, Niedzialek's cardiac arrest would have occurred through "ventricular tachycardia or ventricular fibrillation, the electrical storm" instead of PEA because methamphetamine overstimulates the heart and electrical system.[4]

After the close of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law on all claims under

---

[4] Defense toxicology expert Dr. Richard Clark agreed that Niedzialek's methamphetamine level was not high enough to have caused his cardiac arrest alone.

Federal Rule of Civil Procedure 50(a), and the district court denied that motion. [5]

## C.

The jury was given a special verdict form to guide its deliberations. Question 1 addressed Plaintiff's Fourth Amendment excessive force and state law battery claims and asked jurors, "Did Deputy Brian Keeney and/or Deputy Sonia Gomez use excessive or unreasonable force or restraint against Kevin Niedzialek?" The jury was instructed: "Under the Fourth Amendment, a law enforcement officer may use only such force or restraint as is 'objectively reasonable' under the totality of the circumstances." In determining whether either deputy "used excessive force or restraint when they restrained Kevin Niedzialek on his chest after handcuffing," the jury was directed to consider "all of the circumstances known to each officer on the scene," including eleven listed factors commonly associated with a Fourth Amendment reasonableness analysis under *Graham v. Connor*, 490 U.S. 386 (1989).

Question 3 on the special verdict form addressed Plaintiff's state law negligence claim. It asked jurors, "Were Deputy Brian Keeney and/or Deputy Sonia Gomez negligent after Kevin Niedzialek was restrained?" The jury was instructed to consider whether "the amount of force or restraint used by [the deputies] was unreasonable" and whether "the use of unreasonable force or restraint [by the deputies] was a substantial factor" in causing Niedzialek's death. In deciding whether the force or restraint used by the

---

[5] Plaintiff's negligence claim against Sheriff Bianco was voluntarily dismissed before the case was submitted to the jury.

deputies was unreasonable, the jury was directed to consider
the "totality of the circumstances," defined by the instruction
as "all facts known to the officer[s] at the time, including the
conduct of Deputies Brian Keeney and/or Sonia Gomez and
Kevin Niedzialek leading up to the use of force or restraint."[6]

The jury returned a mixed verdict, finding unanimously
for Defendants on Plaintiff's Fourth Amendment excessive
force and state law battery claims and unanimously for
Plaintiff on her state law negligence claim.  It apportioned
twenty percent of the fault to Deputies Keeney and Gomez
and the remaining eighty percent to Niedzialek.  After the
jury awarded $7.5 million in damages, the district court
entered a judgment of $1.5 million for Plaintiff.

## D.

Defendants renewed their motion for judgment as a
matter of law under Federal Rule of Civil Procedure 50(b),
arguing that the jury was foreclosed from finding for
Plaintiff on the issue of negligence after it had determined
that Deputies Keeney and Gomez had not used unreasonable
force or restraint against Niedzialek in violation of his
Fourth Amendment rights.    Defendants argued that
California negligence claims must be analyzed under the
same standard for Fourth Amendment excessive force
claims—that is, reasonableness must be assessed from the
perspective of a reasonable officer based on the totality of

---

[6] Although there was overlap between the Fourth Amendment excessive
force and state law negligence instructions, the negligence instruction
did not contain the eleven factors listed in the excessive force instruction,
and the excessive force instruction did not define "totality of the
circumstances."

the facts and circumstances known to the officer at the time force is used.

The district court denied Defendants' Rule 50(b) motion. The California Supreme Court's decision in *Hayes*, the district court explained, stated that the standard of reasonable care under California negligence law is not the same as the reasonableness standard under the Fourth Amendment.   The district court rejected Defendants' contention that *Hayes* should be understood to apply only to pre-force conduct, explaining that the California Supreme Court had "restated broad principles of California negligence law" and expressly noted that "negligence liability 'can arise, *for example*, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable,'" quoting *Hayes*, 57 Cal. 4th at 639.

In the district court's view, the jury's mixed verdicts could be reconciled.  The district court noted that "multiple experts testified for Plaintiff that the Deputies' use of prone restraint was contrary to national standards of care in policing and contributed to the hypoxia and acidosis that caused Mr. Niedzialek's Pulseless Electrical Activity (PEA) cardiac arrest, resulting in anoxic brain injury and death." The evidence permitted the jury to find that the deputies acted negligently even as it found that their conduct did not constitute excessive force under the Fourth Amendment.[7] This appeal followed.

---

[7] The district court also pointed out that the remedy sought by Defendants—judgment as a matter of law—was not a permissible form of relief.  Where a jury's verdicts are irreconcilable, the appropriate

## II.

We review de novo a district court's denial of a renewed Rule 50(b) motion for judgment as a matter of law. *Bell v. Williams*, 108 F.4th 809, 818 (9th Cir. 2024). Generally, "[w]e must uphold the jury's verdict if it is 'supported by substantial evidence, which is evidence adequate to support the jury's conclusion.'" *Id.* (quoting *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008)). However, where "inconsistent verdicts are alleged, the test is not whether there was substantial evidence for the jury's conclusion, but whether it is *possible to reconcile* the verdicts." *Vaughan v. Ricketts*, 950 F.2d 1464, 1471 (9th Cir. 1991).

"When faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial." *Toner for Toner v. Lederle Lab'ys, a Div. of Am. Cyanamid Co*., 828 F.2d 510, 512 (9th Cir. 1987). "[I]f it is possible to reconcile the verdicts on any reasonable theory consistent with the evidence," then we must uphold the judgment. *Vaughan*, 950 F.2d at 1471; *see also Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." (quoting *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962)).

---

remedy is to remand for a new trial. *See Tanno v. S.S. President Madison Ves*, 830 F.2d 991, 992–93 (9th Cir. 1987). As the district court observed, "If there are two inconsistent findings, one for Plaintiff and the other for Defendants, why would the remedy be throwing out the finding Defendants do not like and keeping the one they do?"

## A.

On appeal, Defendants renew their contention that the jury was precluded from finding negligence after finding that Deputies Keeney and Gomez did not use excessive force or restraint against Niedzialek under the Fourth Amendment. According to Defendants, unless pre-force tactical conduct and decisions are implicated, the same Fourth Amendment reasonableness standard must apply when evaluating state law negligence and federal excessive force claims.[8] Defendants' argument falters from the outset because, as the California Supreme Court and our circuit authority make clear, the federal and state standards are legally distinct.

Under the Fourth Amendment, an officer's use of excessive force during an investigation or arrest constitutes an unreasonable seizure. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). When evaluating the reasonableness of an officer's use of force, courts must consider the "totality of the circumstances," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (cleaned up). Other factors may also bear on the reasonableness analysis, such as whether less intrusive means are available, whether any warning was given before force is employed, and whether special caution should be exercised when an arrestee shows signs of mental instability. *See Glenn v. Wash. Cnty.*, 673 F.3d 864, 875–76 (9th Cir. 2011). The Fourth Amendment reasonableness inquiry "is an objective one" and asks "whether the officers' actions are 'objectively reasonable' in light of the facts and

---

[8] Plaintiff does not challenge the deputies' conduct and decisions that preceded their handcuffing of Niedzialek.

circumstances confronting them, without regard to [the officers'] underlying intent or motivation." *Graham*, 490 U.S. at 397.

Fourth Amendment jurisprudence is rooted in "an understanding of the [constitutional] text's original public meaning at ratification and 'traditional standards of reasonableness.'" *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1122 (9th Cir. 2021) (quoting *Virginia v. Moore*, 553 U.S. 164, 171 (2008). "California negligence law, on the other hand, is the product of common law developed through decisions by California courts." *Id.* As we have observed, "the U.S. Constitution and California common law are thus two distinct legal frameworks," and therefore "'when a State chooses to protect … beyond the level that the Fourth Amendment requires,' these 'additional protections exclusively a[re] matters of state law.'" *Id*. (quoting *Moore*, 553 U.S. at 171).

Under California negligence law, a plaintiff must show that the defendant has "a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Vasilenko v. Grace Fam. Church*, 3 Cal. 5th 1077, 1083 (2017) (quoting *Beacon Residential Cmty. Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014)). The California Supreme Court has long recognized that law enforcement officers have a duty to act reasonably when using deadly force against a suspect. *See Hayes*, 57 Cal. 4th at 629 (citing *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979), and *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970)).[9] Like the federal standard, "[t]he

_____

[9] California courts also recognize a special duty by law enforcement to use reasonable care when arresting or detaining an individual because

reasonableness of a particular use of force must be judged
from the perspective of a reasonable officer on the scene,
rather than with the 20/20 vision of hindsight." *Id.* at 632
(quoting *Graham*, 490 U.S. at 396).  "The reasonableness of
an officer's conduct is determined in light of the totality of
the circumstances." *Id*. at 629.

Because the Fourth Amendment and California
negligence law both focus on whether an officer's use of
deadly force has been reasonable under a totality of the
circumstances, confusion has arisen whether these two
standards are the same. *See Hayes*, 57 Cal. 4th at 639.  That
question was settled by the California Supreme Court in
*Hayes* following certification by this court.  *See Hayes v.
Cnty. of San Diego*, 658 F.3d 867 (9th Cir. 2011).

In *Hayes*, two San Diego County Sheriff's deputies
responded to a domestic disturbance call at the home of
Shane Hayes where they were informed that Hayes had
attempted suicide earlier that evening. *Hayes*, 57 Cal. 4th at
626.  The deputies encountered Hayes in an adjoining room
holding a knife, and when Hayes walked toward them, the
deputies drew their weapons and shot and killed him. *Id*.
Hayes's daughter filed a wrongful death suit in federal
district court asserting various claims, including a claim of
negligence based on the deputies' pre-shooting conduct. *Id.*
at 627.  The district court concluded that the sheriff's
deputies owed plaintiff no duty of care with regard to their
pre-shooting conduct and therefore they could not be held
liable for negligently provoking a dangerous encounter in

---

"[o]nce in custody, an arrestee is vulnerable, dependent, subject to the
control of the officer and unable to attend to his or her own medical
needs." *Frausto v. Dep't of Cal. Highway Patrol*, 53 Cal. App. 5th 973,
993 (2020).

which the use of deadly force was then justified. *Id.* at 631–32. On appeal to this court, we certified the following question to the California Supreme Court: "Whether under California negligence law, sheriff's deputies owe a duty of care to a suicidal person when preparing, approaching, and performing a welfare check on him." *See Hayes*, 658 F.3d at 868.

The California Supreme Court granted our request but restated the issue as "[w]hether under California negligence law, liability can arise from tactical conduct and decisions employed by law enforcement preceding the use of deadly force." *Hayes*, 57 Cal. 4th at 626.[10] The Court responded that "such liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Id.* In rejecting the district court's conclusion that the deputies could not be held liable for negligence based upon their pre-shooting conduct, *Hayes* noted that this "overlooks the long-established principle of California negligence law that the reasonableness of a peace officer's conduct must be determined in light of the totality of circumstances." *Id.* at 632.

*Hayes* found its earlier decision in *Grudt* instructive. In *Grudt*, a plainclothes officer approached a vehicle carrying a double-barreled shotgun and rapped the muzzle against the

---

[10] By restating the certified question, the state high court "sought to avoid any misleading reference to a separate preshooting duty." *Hayes*, 57 Cal. 4th at 631. That was because the only injury Hayes's daughter alleged was the loss of her father, which "corresponds to a single duty (the duty not to use deadly force in an improper manner), and the breach of that duty gives rise to a single indivisible cause of action." *Id.* *Hayes* did not address whether a separate duty exists under California law to "perform a welfare check on a suicidal person in a reasonable manner." *Id.* at 630.

vehicle's window.  2 Cal. 3d at 581–82.  Believing he was
about to be robbed, the driver accelerated his vehicle toward
a second officer in plainclothes.  *Id*.  Both officers opened
fire on the driver, killing him.  *Id*.  *Grudt* held that the trial
court erred in barring a claim of negligence against the
officers.    *Id*. at 585–88.    As *Hayes* explained,
"[s]ignificantly, the shooting in *Grudt* appeared justified *if
examined in isolation*, because the driver was accelerating
his car toward one of the officers just before the shooting."
*Hayes*, 57 Cal. 4th at 629 (emphasis in original).  But the
totality of the circumstances, including the pre-shooting
conduct of the officers, permitted a jury to find that the
officers had not acted "in a manner consistent with their duty
of due care when they originally decided to apprehend
Grudt, when they approached his vehicle with drawn
weapons, and when they shot him to death."  *Grudt*, 2 Cal.
3d at 587.  "In other words, preshooting circumstances might
show that an otherwise reasonable use of deadly force was
in fact unreasonable."  *Hayes*, 57 Cal. 4th at 630.

*Hayes* clarified that the "[t]he Fourth Amendment's
'reasonableness' standard is not the same as the standard of
'reasonable care' under tort law, and negligent acts do not
incur constitutional liability.'" *Id*. at 639 (quoting *Billington
v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002), *abrogated on
other grounds by Cnty. of Los Angeles v. Mendez*, 581 U.S.
420, 427–28 (2017)).  *Hayes* explained that "state negligence
law, which considers the totality of the circumstances
surrounding any use of deadly force . . . is broader than
federal Fourth Amendment law, which tends to focus more
narrowly on the moment when deadly force is used."  *Id.* at
639 (first citing *Grudt*, 2 Cal. 3d at 585–88; then citing
*Billington*, 292 F.3d at 1190).  *Hayes* also noted that its prior
decision in *Hernandez v. City of Pomona*, 46 Cal. 4th 501

(2009), should not be read to mean that the federal and state standards are co-extensive simply because both require consideration of the "totality of the circumstances" in determining reasonableness. *Hayes*, 57 Cal. 4th at 639 (quoting *Hernandez*, 46 Cal. 4th at 514). If the standards were the same, *Hayes* pointed out, the *Hernandez* opinion would not have separately analyzed evidence of the officers' pre-shooting conduct under federal and state theories of liability. *Id.*

Since *Hayes* was decided, we have repeatedly acknowledged that California negligence law "is broader than federal Fourth Amendment law." *C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252, 1257 n.6 (9th Cir. 2016); *accord Vos v. City of Newport Beach*, 892 F.3d 1024, 1037–38 (9th Cir. 2018); *see also Tabares*, 988 F.3d at 1126–28 (holding that the district court erred by "conflat[ing] the broader California negligence standard regarding pre-shooting conduct with the Fourth Amendment standard.").

**B.**

Notwithstanding *Hayes*'s clear statement that California tort law's "reasonable care" standard is distinct from the Fourth Amendment's "reasonableness" standard, *Hayes*, 57 Cal. 4th at 639, Defendants argue that the *only* difference between a federal excessive force claim and a California negligence claim is with respect to an officer's tactical conduct and decisions preceding his or her use of lethal force. We disagree with Defendants' narrow reading of *Hayes*.

As the district court observed, *Hayes* restated broad principles of California negligence law, taking care to explain that negligence liability "can arise, *for example*, if the [pre-shooting] tactical conduct and decisions show, as

part of the totality of circumstances, that the use of deadly force was unreasonable." *Id.* (emphasis added). The California Supreme Court's focus on conduct preceding the use of deadly force in *Hayes* was a consequence of the limited issue certified to it, not a limitation imposed by the state high court. On the contrary, *Hayes* emphasized that there is "no sound reason to divide plaintiff's [negligence claim] artificially into a series of decisional moments." *Id.* at 637. Pre-force conduct should not be considered in isolation; it is merely one "part of a continuum of circumstances" surrounding the reasonableness of an officer's use of deadly force. *Id.* at 638. Defendants' suggestion that *Hayes* should be confined to pre-force conduct runs counter to the court's rejection of analyzing such moments in isolation.

Furthermore, *Hayes*'s conclusion that the California negligence standard differs from the federal standard was not simply a difference in scope. *Hayes* explains that there are differences in the "standards" applied to state negligence and federal excessive force claims, emphasizing that "state negligence law, which considers the totality of the circumstances surrounding any deadly use of force," "is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used." *Id.* at 639 (cleaned up). The court was plainly aware that both federal and state law standards require consideration of the "totality of the circumstances," *see id.*, but *Hayes* indicates that a factfinder could view those circumstances differently when determining whether a law enforcement officer's use of deadly force was

unreasonable.**[11]**   *See also Tabares*, 988 F.3d at 1122
(discussing the origins and "distinct legal frameworks"
between California negligence law and the Fourth
Amendment).

Finally, Defendants read too much into *Hayes*'s single
citation of *Graham* for the proposition that "[t]he
reasonableness of a particular use of force must be judged
from the perspective of a reasonable officer on the scene,
rather than with the 20/20 vision of hindsight." *Hayes*, 57
Cal. 4th. at 632 (quoting *Graham*, 490 U.S. at 396).
Defendants argue that this meant California adopted the
*Graham* reasonableness standard wholesale in
circumstances other than an officer's pre-force conduct.  But
that ignores *Hayes*'s extended discussion about the
differences between the state and federal law standards, as
well as the California Supreme Court's disapproval of a state
appellate court decision that cleaved too closely to the
Fourth Amendment standard.  *See id.* at 638–39.

## C.

Taking the California Supreme Court at its word that the
"Fourth Amendment's 'reasonableness' standard is not the
same as the standard of 'reasonable care' under tort law,"
and that California negligence law is broader than the Fourth
Amendment, *Hayes*, 57 Cal. 4th at 639 (citations omitted),
we conclude that the jury's excessive force and negligence
verdicts in this case are reconcilable on a "reasonable theory

---

[11] For example, a jury might analyze a Fourth Amendment claim
narrowly to focus on the manner and context in which force or restraint
was applied in that moment and might view a state negligence claim
broadly to consider whether officers acted in a manner consistent with
their duty of due care during the use of force incident.  *See Grudt*, 2 Cal.
3d at 585–88.

consistent with the evidence." *Vaughan*, 950 F.2d at 1471. The jury instructions and special verdict form reflected, albeit obliquely, some of the substantive distinctions between Fourth Amendment law and state negligence law.

For the Fourth Amendment claim, the jury was instructed to consider whether either deputy's use of force or restraint against Niedzialek after handcuffing him was "objectively reasonable" under the totality of the circumstances. The jury was asked to assess "all of the circumstances known to each officer on the scene," including eleven factors bearing upon "the nature of the crime" or circumstances at the time force was applied, whether Niedzialek posed an immediate threat to the safety of the officers or others, whether Niedzialek was actively resisting arrest or attempting to flee, the "relationship between the need for the use of force and the amount of force used," the extent of Niedzialek's injury, and "the availability of alternative methods to take [Niedzialek] into custody," among other factors.

With respect to negligence, the jury was asked to determine whether the deputies "were negligent in using unreasonable force or restraint to arrest, detain, prevent escape of, or overcome resistance by Kevin Niedzialek," and whether the use of unreasonable force or restraint was a substantial factor in causing Niedzialek's death. The negligence instruction did not include all eleven factors listed in the Fourth Amendment instruction. And although the negligence instruction also prompted the jury to evaluate the reasonableness of the deputies' conduct based on a "totality of the circumstances," it alone defined that inquiry as "all facts known to the officer[s] at the time, including the conduct of Deputies Brian Keeney and/or Sonia Gomez and Kevin Niedzialek leading up to the use of force or restraint."

The jury instructions thus permitted the jury to focus on different aspects of the "totality of the circumstances" to determine if the deputies' use of force or restraint resulting in Niedzialek's death was unreasonable. As *Hayes* reflects, the Fourth Amendment instructions here focused more attention on the moment "when [the deputies] restrained Kevin Niedzialek on his chest after handcuffing," asking jurors to consider "the nature of the crime or other circumstances known to the deputies *at the time force was applied*," whether he posed an immediate threat or was resisting arrest, and whether alternatives existed "to take [Niedzialek] into custody." The jury could have analyzed the Fourth Amendment claim narrowly by focusing on the amount of force the deputies applied to Niedzialek after he was handcuffed and determined that the light pressure applied to his back and legs was not excessive.

Conversely, the negligence instruction allowed the jury to consider more broadly "all facts known to [a reasonable] officer at the time," including Niedzialek's and the deputies' conduct "leading up to the use of force or restraint" as well as whether the deputies' continued restraint of Niedzialek was reasonably necessary after he ceased moving or breathing and was no longer "actively resisting arrest/detention."

Plaintiff's law enforcement expert Jeffrey Noble testified that the national standard of care in policing requires moving an arrestee into a recovery position as soon as possible after handcuffing by rolling them to their side or sitting them up to facilitate breathing and prevent asphyxiation. Noble opined that the County of Riverside's policy ignored this generally accepted standard of care. During the cross-examinations of Deputies Keeney and Gomez, Plaintiff emphasized that the deputies failed to

respond to Niedzialek's medical needs even after he stopped moving and was unresponsive to their questions. Plaintiff's medical expert Dr. Wohlgelernter testified that Niedzialek was prevented from overcoming an "oxygen debt" when Deputies Keeney and Gomez restrained him in a prone position with pressure applied to his back, rather than putting him in a recovery position where he could breathe more deeply. Dr. Wohlgelernter explained that the "lethal comb[ination]" of decreasing oxygen levels and increasing acid levels led Niedzialek to suffer cardiac arrest, and that his death was not caused by the level of methamphetamine in his system.

From this evidence, the jury could have reasonably determined that Deputies Keeney and Gomez owed Niedzialek a duty of due care after restraining him in handcuffs and breached their duty of care by not placing him in a recovery position, failing to check whether he was breathing and had a pulse, or applying pressure on his back when it was no longer necessary. When faced with a claim of inconsistent jury verdicts, our task is to "search for a reasonable way to read the verdicts as expressing a coherent view of the case," *Toner*, 828 F.2d at 512, and to uphold the judgment "if it is possible to reconcile the verdicts on any reasonable theory consistent with the evidence," *Vaughan*, 950 F.2d at 1471. Because it is possible to do so here, we affirm the district court's denial of Defendant's renewed motion for judgment as a matter of law.

**AFFIRMED.**